Chief Judge Fuld.
We are called upon to decide (1) whether a school board has the authority to enter into a collective bargaining agreement granting economic benefits to schoolteachers, absent specific statutory authorization to do so and (2) whether such a board lacks the power to enter into a collective bargaining agreement containing a clause which provides for the arbi *125 tration of disputes concerning disciplinary action taken against tenure teachers.
The facts are undisputed. The plaintiff: (hereafter called the “ Board ”), as a public employer under the Taylor Law (Civil Service Law, art. 14), recognized the defendant (hereafter referred to as the “Association”) as the employee organization representing the school district teachers. The parties — following recommendations by a fact-finding panel appointed by the New York State Public Employment Belations Board — entered into a collective bargaining agreement for the 1969-70 school year. Included in this agreement are five provisions which gave rise to this litigation. Pour of them relate to the payment of economic benefits in the form of either salary increases or reimbursement for certain expenses incurred, and the fifth provides for arbitration in cases in which tenure teachers have been disciplined.
The first two challenged provisions deal with the reimbursement of teachers for job related personal property damage (the damage reimbursement provision).[1] The next provides partial reimbursement to teachers for graduate courses taken with the approval of the school administration (the tuition reimbursement provision).[2] The fourth questioned clause (art. XXI) *126 provides for a salary increment for teachers during their last . year of service before retirement (the retirement award provision) and reads as follows:
“ Bach teacher who hereafter indicates his intention to retire one year prior to such retirement under the New York State Teachers Retirement System or whose retirement is mandatory under such system shall receive at the start of the last school year of service a salary increase for that year equal to 5/10 of 1% (0.5%) of his current salary multiplied by the number of years of service in this school district, such salary increase not to exceed $1500.”
The remaining disputed provision (art. XVIII, § C) relates to the arbitration of disputes regarding disciplinary action taken against tenure teachers (the grievance provision):
“No tenure teacher shall be disciplined, reprimanded, reduced in rank or compensation, suspended, demoted, transferred, terminated or otherwise deprived of any professional advantage without just cause. * * * Any such action, including adverse evaluation of teacher performance or a violation of professional ethics asserted by the Board or any agent thereof, shall be subject to the grievance procedure set forth in this Agreement ”.
The Board, questioning its own power to agree and bind itself to the provisions set out above, raised the issue of their legality in September, 1969, during the negotiations leading up to the execution of the collective bargaining agreement, and shortly thereafter it brought this action for a judgment (1) declaring those provisions illegal and of no effect and (2) staying arbitration proceedings which had been commenced by the Association under the grievance provision. The court at Special Term held that the provisions relating to tuition reimbursement and to the grievance procedure were illegal but sustained the validity of the remaining provisions. On appeal, the Appellate Division agreed with Special Term in all respects except one; it concluded that the tuition reimbursement provision was also valid (36 A D 2d 753). Two of the justices, *127 dissenting in part, believed that the retirement award provision was illegal.
In our view, all of the challenged provisions are valid.
The basic question posed by this appeal is whether there is any fundamental conflict between the provisions of the Taylor Law and the provisions of any other statute dealing with the powers and duties of school boards. TJnder the Taylor Law, a public employer, in order ‘ ‘ to promote harmonious and cooperative relationships between government and its employees ” (§ 200), is empowered to recognize an employee organization for the purpose of collective bargaining negotiations (§ 204, subd. 1). When such an organization is recognized, the public employer “ is required to negotiate collectively with such employee organization in the determination of, and administration of grievances arising under, the terms and conditions of employment of the public employees as provided in this article, and to negotiate and enter into written agreements with such employee organizations in determining such terms and conditions of employment” (§ 204, subd. 2; italics supplied).
In other words, the validity of a provision found in a collective agreement negotiated by a public employer turns upon whether it constitutes a term or condition of employment. If it does, then, the public employer must negotiate as to such term or condition and, upon reaching an understanding, must incorporate it into the collective agreement unless some statutory provision circumscribes its power to do so.
It is manifest that each of the provisions here challenged constitutes a term or condition of employment. It is certainly not uncommon for collective agreements in the public sector, as well as in the private sector, to contain “ damage reimbursement ” provisions similar to the one before us. If, during the course of performing his duties, an employee has his clothing, eyeglasses or other personal effects damaged or destroyed, it is certainly reasonable to reimburse him for the cost of repairing or replacing them.
The tuition reimbursement provision, as well, clearly relates to a term and condition of employment. School boards throughout the State pay teachers a salary differential for completing a specified number of credit hours above the baccalaureate *128 degree. Since graduate work tends to increase teacher skills and is beneficial to the school district, there is no reason why the Board should not encourage such work by absorbing one half of the tuition expense.
The so-called retirement award provision also involves a term and condition of employment.[3] Employers, both in the public and private sectors, have traditionally paid higher salaries based upon length of service and training. In addition to the fact that the payment was to be for services actually rendered during their last year of employment, the benefit provided for served the legitimate purpose of inducing experienced teachers to remain in the employ of the .school district.[4] It is not, therefore, a constitutionally prohibited “gift” of public moneys (N. Y. Const., art. VII, § 8, subd. 1; art. VIII, § 1), since the retiring teachers who benefit from this provision have furnished a “ corresponding benefit or consideration to the State ”. (Matter of Teachers Assn. [Bd. of Educ.], 34 A D 2d 351, 353.) Nor may the provision be regarded as creating a retirement plan since the additional compensation was made payable only upon completion of the required services during the year prior to retirement. If this were to be deemed a retirement benefit, then, it would be equally logical to argue that increases in compensation in the years immediately prior to retirement were part and parcel of the retirement plan.
This brings us to the grievance provision. It assures teachers with tenure that no disciplinary action will be taken against them without just cause and that any dispute- as to the existence of such cause may be submitted to arbitration. It is a provision commonly found in collective bargaining agreements in the private and public sectors and carries out Federal and State policy favoring arbitration as a means of resolving labor disputes. (See Steelworkers v. Warrior & Gulf Co., 363 U. S. 574, 583-585; Matter of Associated Teachers [Bd. of Educ.], *129 60 Misc 2d 443, 447; Klaus, The Evolution of a Collective Bargaining Relationship in Public Education, 67 Mich. L. Rev. 1033, 1040-1041; Krislov & Peters, Arbitration of Grievances in Educational Units, 23 Lab. L. J. 25.)
In sum, each of the provisions under attack relates to a term or condition of employment and, accordingly, the Board was, in light of the Taylor Law, required to negotiate—unless its contentions, to which we turn, compel a different conclusion.
Although the Board raises specific objections that are peculiar to each of the challenged items, its basic premises is the same—that, absent a statutory provision expressly authorizing a school board to provide for a particular term or condition of employment, it is legally prohibited from doing so. Proceeding from that premise, the Board would have us hold that school boards possess only those powers granted by a single provision, section 1709, of the Education Law. Quite apart from the fact that that section contains a broad grant of powers,[5] the Board’s premise is fallacious. Under the Taylor Law, the obligation to bargain as to all terms and conditions of employment is a broad and unqualified one, and there is no reason why the mandatory provision of that act should be limited, in any way, except in cases where some other applicable statutory provision explicitly and definitively prohibits the public employer from making an agreement as to a particular term or condition of employment.
Were it otherwise, a school board would have a hard time bargaining effectively with its teachers concerning terms of employment, since it would frequently be difficult, if not impossible, to find an express grant of power with respect to any particular subject. To adhere to the restrictive view advanced by the Board “ would ”, the Appellate Division recently wrote in Matter of Teachers Assn. (Bd. of Educ.) (34 A D 2d, supra, at p. 356), “virtually destroy the bargaining powers which public policy has installed in the field of public employment and throttle the ability of a Board of Education to meet the *130 changing needs of employer-employee relations within its district.”
Public employers must, therefore, be presumed to possess the broad powers needed to negotiate with employees as to all terms and conditions of employment. The presumption may, of course, be rebutted by showing statutory provisions which expressly prohibit collective bargaining as to a particular term or condition but, “ [i]n the absence of an express legislative restriction against bargaining for that term of an employment contract between a public employer and its employees, the authority to provide for such [term] resides in the [school board] under the broad powers and duties delegated by the statutes.” (Matter of Teachers Assn. [Bd. of Educ.], 34 A D 2d 351, 355, supra; see, also, Rayburn v. Board of Educ., 71 LRRM 2177, 2178 [Mich. Cir. Ct.].) It is hardly necessary to say that, if the Board asserts a lack of power to agree to any particular term or condition of employment, it has the burden of demonstrating the existence of a specific statutory provision which circumscribes the exercise of such power. It has failed to - meet this burden in the present case.
The Board cites no legislation which expressly or even impliedly prevented it from including the tuition and damage reimbursement provisions. Nor does section 113 (subd. a) of the Retirement and Social Security Law—to which the Board points — prohibit inclusion of the retirement award provision; that provision merely provided for the payment of a salary increment based upon length of service.[6] We also find without *131 substance the Board’s claim that the grievance provision violates section 3020-a of the Education Law, generally known as the Tenure Law. That statute provides that, prior to any disciplinary action being taken against a teacher, the latter must be afforded a hearing before an impartial panel, which then submits recommendations to the school board (Education Law, § 3020-a, subds. 2, 3, 4). The Board is not bound by these recommendations and may disregard them in making its decision. Since a decision by the Board itself to impose discipline is a prerequisite to arbitration, the grievance provision in no way supplants this aspect of the Tenure Law. In addition, section 3020-a (subd. 5) declares that any employee “ feeling himself aggrieved ’ ’ may either appeal to the Commissioner of Education or commence an article 78 proceeding. The procedure thus set up is not mandatory, its implementation resting entirely in the teacher’s discretion. Thus, the Legislature has given a tenure teacher a choice of two methods of statutory appeal if he desires to challenge an adverse decision of the school board. But it does not follow from this that the Board is inhibited from agreeing that the teacher may choose arbitration as a third method of reviewing its determination.
It is of more than passing significance that the Taylor Law explicitly vests employee organizations with the right to represent public employees not only in connection with negotiations as to the terms and conditions of employment but also as to “the administration of grievances arising thereunder” (Civil Service Law, § 203; italics supplied). Indeed, it is the declared policy of this State to encourage ‘ ‘ public employers and * * * employee organizations to agree upon procedures for resolving disputes” (§ 200, subd. [c]). And arbitration is, of course, part and parcel of the administration of grievances. (See Steelworkers v. Warrior & Gulf Co., 363 U. S. 574, 578, supra; McGuire v. Humble Oil & Refining Co., 355 F. 2d 352, 358; see, also, Krislov & Peters, Arbitration of Grievances in Educational Units, 23 Lab. L. J. 25, 29.) There is, therefore, no reason to infer that the Legislature intended that the provisions of the Tenure Law should, by implication, deprive *132 employee organizations of a right to represent employees in the administration of disciplinary grievances.[7]
Nor can we agree that a board of education is better qualified than an arbitrator to decide whether a teacher in its employ should be dismissed for incompetency or misconduct. It may not be gainsaid that arbitrators, selected because of their impartiality and their intimate knowledge of school board matters are fully qualified to decide issues such as those under consideration. Moreover, if the school board’s contentions were sustained, it would be the Supreme Court, not the board of education, which would pass upon the correctness of the determination in an article 78 proceeding. In any event, though, we cannot subscribe to the view that the legality of an arbitration provision turns on the relative competency of arbitrator and judge.
We would but add that there is no basis for the fear expressed that to permit the grievance to go to arbitration will enable the employee to appeal — pursuant to section 3020-a, subdivision 5, of the Education. Law — to the arbitrator after he has lost before the commissioner or the court or, conversely, to the Commissioner of Education or the Supreme Court after he has submitted to arbitration and lost before the arbitrator.[8] Once the controversy is heard and a decision arrived at either by the arbitrator or by the commissioner or by the judge, that is the end of the matter. As already indicated, the collective bargaining agreement does no more than give the employee a possible third means of reviewing a Board determination.
The order appealed from should be modified, without costs, by reversing so much thereof as holds illegal the provision permitting arbitration with respect to the disciplining of tenure teachers and, except as so modified, affirmed.

. These clauses — contained in article VIII—read as follows:
“E. The Board will provide protection of teachers by reimbursement for cost of replacing or repairing dentures, eyeglasses, etc., not covered by Workmen’s Compensation, destroyed or lost as the result of an injury sustained in the course of his or her employment.
“F. The Board will provide reimbursement for repair or value, whichever is less, of clothing and personal effects damaged or destroyed during the course of and incident to employment, provided loss is not caused by negligence of the claimant. Personal effects do not include automobiles and/or other vehicles.”

. The provision (art. XI, § A) reads in this way:
“Any member of the professional staff shall, upon presentation of his transcript and a bursar’s receipt, be reimbursed in a lump sum in an amount equal to 50% of the cost per credit hour of such work up to a maximum of ten hours per year; provided the courses are of a content related to the curriculum or course of study taught by the teacher and are approved in advance by the Principal and Superintendent. The benefits provided above may be extended to other courses with the approval of the Superintendent.”

. The final year salary increment is comparable to the salary increment which was—■ pursuant to section 3102 (subd. 3) of the Education Law (repealed L. 1971, ch. 123) —formerly granted by the Board unilaterally after a teacher had been employed for 30 years.

. In addition, it tends to assure that those teachers who plan to retire give the Board sufficient advance notice so that it may acquire adequate replacements.

. Subdivision 33 of section 1709 recites that the Board shall have “all the powers reasonably necessary to exercise powers granted expressly or by implication and to discharge duties imposed expressly or by implication by this chapter or other statutes.”

. It should be noted that section 431 of the Retirement and Social Security Law, enacted last year (L. 1971, ch. 503), provides in subdivision 3 that, in a retirement or pension plan to which the State or a municipality thereof contributes, the salary base for the computation of retirement benefits shall not include " any additional compensation paid in anticipation of retirement ” earned or received “ on or after April first, nineteen hundred seventy-two ”. Quite apart from the fact that the collective agreement in this case antedated enactment of section 431, it is obvious that the statute, whatever impact it might have on the payment of retirement benefits, does not invalidate a salary increment payable, pursuant to the “retirement award provision ”, for services rendered during the final year of employment. (See Kranker v. Levitt, 30 N Y 2d 574.) And we have no need or occasion to consider the impact of any other statute (e.g., Education Law, § 501, subd. 11) upon a retirement award provision such as is contained in article XXI.

. Likewise unfounded is the Board’s claim that the limited definition of the term “ grievance ” found in the General Municipal Law (§ 682, subd. 4) is to be incorporated into the Taylor Law and restrict the meaning of that term as there used.

. We assume, of course, that the arbitration proceeding is fair and regular and free from any procedural infirmities that might invalidate the award. (Cf., e.g., Spielberg Manufacturing Company, 112 N.L.R.B. 1080.)