BROWN v HOLTON PUBLIC SCHOOLS (ON REMAND, ON REHEARING)

1. Labor Relations—Arbitration—Specific Exclusions.

Claims are proper subjects for arbitration where the claims are not specifically excluded from arbitration in a collective bargaining agreement and where it cannot be said with positive assurance that the arbitration clause of the agreement is not susceptible of an interpretation that covers the claim.

2. Schools and School Districts—Labor Relations—Power of School Board—Arbitration—Renewal of Contracts—Conditions of Employment—Statutes.

Nonrenewal of a teacher's employment contract and resolution of labor disputes through binding arbitration are matters relating to terms or conditions of employment; a school board has the power to contract in regard to these subjects and will be bound by its agreement absent a showing that its power to do so is specifically limited by statute (MCLA 423.215; MSA 17.455[15]).

3. Arbitration and Award—Labor Relations—Enforcement— Scope of Authority—Discharge of Employees.

An arbitrator's award is unenforceable if it is contrary to the law or if the arbitrator exceeds the scope of his authority under the contract; he has the power to decide questions relating to the discharge of an employee where the contract so permits.

Appeal from Muskegon, James F. Schoener, J. Submitted April 11, 1975, at Grand Rapids. (Docket No. 21002.) Decided March 28, 1977. Opinion amended April 25, 1977.

Complaint by Bruce Brown, a teacher dismissed by defendant school board, and Holton Education

References for Points in Headnotes

[1-3] 48 Am Jur 2d, Labor and Labor Relations § 1246 et seq., § 1304 et seq.
[2] 68 Am Jur 2d, Schools § 143.

Association against Holton Public Schools and the Holton Board of Education for enforcement of an arbitration award. Summary judgment for defendants. Plaintiffs appealed. Affirmed, 62 Mich App 328 (1975). Plaintiffs appealed to the Michigan Supreme Court. Reversed and remanded to the Court of Appeals, 397 Mich 71 (1976). On remand, the Court of Appeals reversed and remanded the case to the circuit court in an unpublished opinion. Defendants moved for rehearing in the Court of Appeals. Rehearing granted. On rehearing, the circuit court is reversed and the case remanded.

*Foster, Swift & Collins* (by *Karen Bush Schneider* and *Lynwood E. Beekman)*, for plaintiffs.

*Street, Stevens, Schuler, Johnson, Hipkiss, Piasecki & Knowlton,* for defendant.

Before: DANHOF, C. J., and T. M. BURNS and D. F. WALSH, JJ.

T. M. BURNS, J. Plaintiff Brown was employed by the defendant board of education as a probationary teacher during the 1972–73 school year. In 1973 the board decided to deny Brown a teaching contract for the ensuing school year. Brown filed a grievance pursuant to the collective bargaining agreement (hereinafter the Agreement) between the teachers and the board alleging unjust discharge. The grievance eventually was submitted to arbitration without the participation of the board. The arbitrator found the grievance to be arbitrable and rendered an award on the merits, granting Brown reinstatement with back pay.

This action was instituted by Brown and the Holton Education Association (hereinafter the As-

sociation), the exclusive bargaining representative for teachers employed by the board, to seek enforcement of the arbitration award. The circuit court granted summary judgment for the board. Enforcement of the arbitration award was denied on the grounds that the grievance was not filed within the 30-day period required by the Agreement and that the dispute was not subject to arbitration. On appeal of the circuit court judgment, we affirmed. *Brown v Holton Public Schools,* 62 Mich App 328; 233 NW2d 274 (1975). The Michigan Supreme Court reversed our decision and remanded for resolution of the remaining issues raised by the parties in the initial appeal. *Brown v Holton Public Schools,* 397 Mich 71; 243 NW2d 255 (1976). In an unpublished per curiam opinion released September 22, 1976, we reversed the circuit court order of summary judgment and remanded the cause for further proceedings. We found that claims such as Brown's were not specifically excluded from arbitration in the Agreement and since we could not say with positive assurance that the arbitration clause was not susceptible of an interpretation that covered the claim, the issue was a proper subject of arbitration. In so ruling, we relied upon the language of the Supreme Court in *Kaleva-Norman-Dickson School District No. 6 v Kaleva-Norman-Dickson Teachers Association,* 393 Mich 583; 227 NW2d 500 (1975). Defendants sought, and we ordered on October 25, 1976, rehearing of our decision on remand to address an issue previously raised by the board but not heretofore discussed, to wit:

*May a board of education legally agree to submit questions of the hiring and firing of teachers to binding arbitration?*[1]

---

[1] *See Pontiac Police Officers Association v Pontiac,* 397 Mich 674; 246 NW2d 831 (1976), for discussion of similar issues.

Roughly, defendants argue as follows:

1. Boards of education have the statutory duty to hire and contract with duly qualified teachers. MCLA 340.569; MSA 15.3569.

2. The decision whether to place a probationary teacher on tenure is a legislative or quasi-judicial one which should not be permitted to be placed in the hands of a single arbitrator whose decisions are unassailable even if dead wrong.

3. The Legislature did not intend that public employees in general should have a right to binding arbitration.

While defendants' arguments are forceful, we decline the implicit invitation to issue an opinion *sub silentio* overruling the *Kaleva* decision. The questions with which we are faced must be answered by specific legislative enactment. Meanwhile, we must attempt to resolve these disputes by construction and application of existing law.

Section 15 of the Public Employment Relations Act (hereinafter PERA), MCLA 423.215; MSA 17.455(15), provides in part as follows:

"A public employer shall bargain collectively with the representatives of its employees * * * and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment * * * ."

The Agreement contained a grievance procedure, the final step of which was binding arbitration. Teachers were given the power to file a grievance if they believed that there was a viola-

tion of any provision of the Agreement or any provision of law. The Agreement also provided, in article XII, paragraph E:

"If any teacher for whom a grievance is sustained shall be found to have been unjustly discharged, he shall be reinstated with full reimbursement of all professional compensation lost."

The board possesses broad powers under the PERA to enter into agreements with its teachers. The board did enter into an agreement whereby it agreed to arbitrate certain disputes. The discharge of the plaintiff was such a dispute. The board now argues that it was without power to agree to submit questions of hiring and discharge of teachers to binding arbitration.

"In *Board of Education of District of Philadelphia v Philadelphia Federation of Teachers Local No. 3, AFT, AFL-CIO,* Pa., 346 A2d 35 (1975), the Pennsylvania court confronted the question of whether an agreement to submit the propriety of dismissing a nontenured teacher to arbitration was within the scope of collective bargaining. The question arose, after the board had already agreed to the contract, when the union filed a grievance on behalf of a dismissed teacher.

"Where a board has *voluntarily* entered into a contract of this sort, a reviewing court must take a somewhat different view than should be taken when a board states at the outset that it will not enter into such a contract. In the first instance, the parties have bargained with each other, and the price for including a 'just cause' provision may well have been the exclusion of another provision beneficial to the teachers. Furthermore, the board presumably knew what it was doing when it entered into the contract.

" 'We think it reasonable to believe that the Board entered into the master contract with due deliberation and legal advice, or it would not have adopted it. It

cannot abrogate its own contract for any of the reasons that have been presented here.' *Danville Board of School Directors v Fifield,* 132 Vt 271, 315 A2d 473, 476 (1974)." *Superintending School Committee of Winslow v Winslow Education Assoc,* 363 A2d 229, 232 (Me, 1976).[2]

In *Danville Board of School Directors v Fifield, supra,* the school board argued that the agreement in the contract with its teachers to submit disputes concerning nonrenewal of a teacher's contract to arbitration was an *ultra vires* act since school boards, by statute, have the sole power to hire and dismiss teachers and such power cannot be delegated. The Supreme Court of Vermont ruled that the board could not assert a lack of power to agree to any particular term or condition of employment unless it demonstrated the existence of a specific statutory provision which proscribed the exercise of such power. *Danville, supra,* 475. The Court found that the school board's agreement was authorized by a statute requiring school boards to negotiate with teachers regarding economic conditions of employment. Since the contractual right of teachers to have their contracts renewed was an economic condition of employment, the school board had the power to contract in regard to that subject. We believe the same reasoning is applicable in the case at bar.

The board certainly possessed the power to contract in regard to terms and conditions of employment. MCLA 423.215; MSA 17.455(15). Nonrenewal of a teacher's employment contract and resolu-

[2] In *Board of Education of the School District of Philadelphia v Philadelphia Federation of Teachers Local No. 3 AFT, AFL-CIO,* 346 A2d 35 (Pa, 1975), the Pennsylvania Supreme Court held that a school district may agree in a collective bargaining agreement to submit to arbitration the propriety of discharging a nontenured teacher. In so deciding, the court relied upon the mandatory arbitration provision of Pennsylvania's PERA.

tion of labor disputes through binding arbitration are certainly matters relating to terms or conditions of employment. The board entered into the Agreement voluntarily. It should not now be heard to argue that it didn't have the power to make a particular agreement absent a showing that its power was specifically so limited by statute.[3]

Defendants argue that an arbitrator should not

[3] *See Board of Education of Union Free School District No. 3 of the Town of Huntington v Associated Teachers of Huntington,* 30 NY2d 122; 282 NE2d 109; 331 NYS2d 17 (1972).

*Accord, Susquehanna Valley Central School District at Conklin v Susquehanna Valley Teachers Association,* 37 NY2d 614; 339 NE2d 132; 376 NYS2d 427 (1975): School board required to arbitrate staff reductions dispute because it agreed to do so in collective bargaining agreement. (Distinguishing between compulsion to bargain on arbitration and enforcement of an agreement to arbitrate.)

*Contra, Board of Trustees of Junior College District No. 508 v Cook County College Teachers Union,* 62 Ill 2d 470; 343 NE2d 473 (1976): Authority of board of trustees of junior college to grant or deny promotions cannot be delegated to arbitrator. *See also, Morris v Board of Education of the Laurel School District,* 401 F Supp 188 (D Del, 1975).

In *Local 953, AFSCME v School District of the City of Benton Harbor,* Berrien County Circuit Court #C-6229(b), BNA Government Employee Relations Reports, Volume 216, E-1 (October 30, 1967), Judge Chester Byrns addressed an almost identical issue as follows:

"Unless the law of this state prohibits school districts from agreeing to binding arbitration of grievances of their employees under their collective bargaining agreements, the defendant in this cause is by the terms of its written contract with the plaintiff union obligated to proceed with . . . binding arbitration of the [employee's] grievances."

Factors which Judge Byrns found compelling were:

1. The collective bargaining agreement (which included arbitration provisions) was voluntarily entered into by both parties and, presumably, both benefitted therefrom.

2. While the decision of the arbitrator is final and binding on both parties, the scope of his decision is limited by the contract and he cannot alter the existing contract.

3. The arbitrator is selected by joint participation of the parties who share in his fee and expenses and he is a person meeting the qualifications of the American Arbitration Association.

4. The Michigan Legislature and courts have expressed a preference for arbitration of labor disputes because of its efficiency, fairness and relative inexpensiveness.

5. The public interest is best served in the field of public education by having a means of resolving labor disputes without strikes and within the framework of a labor contract.

be permitted to decide questions relating to the discharge of an employee because he is not accountable for his decisions and hasn't the necessary experience to make such decisions.[4] We disagree.[5] If the award is contrary to the law or if the arbitrator exceeds the scope of his authority under the contract, the award is unenforceable. See *Ferndale Education Association v Ferndale School District (#2),* 67 Mich App 645, 649; 242 NW2d 481 (1976).

As stated by the New York court in *Board of Education of Union Free School District No. 3 of the Town of Huntington v Associated Teachers of Huntington,* 30 NY2d 122; 282 NE2d 109; 331 NYS2d 17 (1972):

"Nor can we agree that a board of education is better qualified than an arbitrator to decide whether a teacher in its employ should be dismissed for incompetency or misconduct. It may not be gainsaid that arbitrators, selected because of their impartiality and their intimate knowledge of school board matters, are fully qualified to

[4] "The most frequent objection to the propriety of arbitration of disputes in public employment is that it involves an unwise delegation of power. In reality it is a policy argument against a system of uninhibited collective bargaining in the public sector stemming from the fear that by submitting disputes to arbitration, powers that have been entrusted to government officials will be given to individuals having no responsibility to the electorate. As noted above, however, experience demonstrates that where disputes have been submitted to arbitration, the arbitrator is not likely to subordinate public interests. An endorsement of collective bargaining in public employment requires a realization that the power to make unilateral decisions on the subjects of wages, hours and conditions of employment must be relinquished. Otherwise, the end result would be merely the adoption of a system of 'consultative management'. If parties unable to reach a mutually acceptable settlement of their dispute at the bargaining table agree to abide by the decision of a neutral third party, the public is the winner because the traditional method of settling impasses, the strike, is avoided." Note, *Legality and Propriety of Agreements to Arbitrate Major and Minor Disputes in Public Employment,* 54 Cornell L Rev 129, 141 (1968). (Footnotes omitted.)

[5] *But see, Dearborn Fire Fighters Union Local 412 v Dearborn,* 394 Mich 229; 231 NW2d 226 (1975).

decide issues such as those under consideration. More-over, if the school board's contentions were sustained, it would be the Supreme Court, not the board of education, which would pass upon the correctness of the determination in an article 78 proceeding." 30 NY2d 122, 132; 282 NE2d 109, 115.

The judgment of the trial court is reversed. This cause is remanded for proceedings not inconsistent with this opinion.