BOARD OF EDUCATION OF YONKERS CITY SCHOOL DISTRICT, Appellant, v RAYMOND G. CASSIDY et al., Respondents.

Second Department, October 24, 1977

*Eugene J. Fox, Corporation Counsel (John Emmett Murphy, II,* of counsel), for appellant.

*Roemer & Featherstonhaugh (James D. Featherstonhaugh* of counsel), for respondents.

*James R. Sandner (David N. Stein* of counsel), for Yonkers Federation of Teachers, *amicus curiae.*

SHAPIRO, J. In a proceeding pursuant to CPLR 7503 (subd [b]) to stay arbitration, petitioner appeals from an order of the Supreme Court, Westchester County, dated December 30, 1976, which, *inter alia,* granted respondents' cross motion to compel arbitration. We affirm.

The parties, on the basis of collective bargaining, entered into a contract for the period July 1, 1975 to June 30, 1976, under which all persons in the bargaining unit were to receive (1) a 5% salary increase on March 1, 1976, (2) certain increments as specifically provided in the contract and (3) additional payments to be made for longevity to certain employees eligible therefor. The petitioner-appellant Board of Education failed to pay those increases, increments and longevity payments because of the adoption by the New York State Legislature in November, 1975 of the Financial Emergency Act (FEA) for the City of Yonkers (L 1975, ch 871), which "suspended" all increases in salary or wages of employees of the City of Yonkers and of covered organizations (which includes the petitioner) which had taken effect since November 20, 1975, or

which were to take effect after that date "pursuant to collective bargaining agreements" then in existence.

The question for determination here is whether under such circumstances the respondents are entitled to invoke the arbitration provision of the contract to deal with the grievance arising out of the petitioner's refusal to make payments of the salary increases, increments and longevity payments provided for in the contract.

Realistically considered, this is another attempt by a union of public employees to avoid or limit the adverse impact of the two financial emergency acts adopted by the Legislature with respect to the City of New York and the City of Yonkers on gains it had obtained through collective bargaining. The previous cases, which will be discussed below, have thus far resulted in a refusal by the courts to strike down the financial emergency acts as unconstitutional either as impairments of contract or denials of equal protection of the laws. Each such case, however, has resulted in limited gains by the union, such as the rejection of the employers' attempts to avoid an arbitration clause[1] or a ruling that the act under consideration was not applicable to a judgment granting the increase[2] or was unconstitutional insofar as it provided that wage increases suspended pursuant to the act were not to be included in the computation of retirement benefits of the employees affected.[3]

In the instant case the union sought to invoke the arbitration provisions of the contract to avoid or limit the impact of the suspension under the act of their wage increases which were scheduled to go into effect after November 20, 1975 and for at least one year after that date. The public employer (petitioner) thereupon initiated the instant proceeding to stay arbitration, interpreting the demand for arbitration as being limited to a request that the wage increase scheduled to go into effect on March 1, 1976 be made effective despite the statute. Strangely enough, the respondent union, instead of rejecting this assumption by contending that there are other aspects of the violation of the contract with which the arbitrator could deal and grant a remedy, other than ordering

1. *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Federation of Teachers,* 40 NY2d 268.

2. *Patrolmen's Benevolent Assn. of City of N. Y. v City of New York,* 41 NY2d 205.

3. *Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth.,* 56 AD2d 53. Our decision in this case has been appealed to the Court of Appeals by the Association and the Transit Authority has filed a cross appeal.

immediate payment of the increase in disregard of the statute, accepted that assumption and elected to attack the constitutionality of the Yonkers FEA as an impairment of a contract, a denial of equal protection of the laws and a denial of due process. Thus the parties, in their briefs, have presented the issue as one which seems inevitably to require us to determine the constitutionality of the Yonkers FEA.[4] In so doing they have failed to fully treat the issue of whether the claimed grievance here is arbitrable under the provisions of the collective bargaining agreement between the parties and whether, assuming it is arbitrable thereunder, the arbitrator may make determinations and grant remedies which do not run athwart of the statute and which, therefore, would not require him to rule on its constitutionality.

### THE CONTRACT AND THE PRIOR PROCEEDINGS

A memorandum of agreement, dated July 8, 1975 and ratified on July 10, 1975, between the petitioner Board of Education of the City of Yonkers (the board) and the Yonkers City School District Unit of the Civil Service Employees Association, Inc. (CSEA), which covers noneducational employees of the board, provided for a 5% salary increase for all unit employees, with the exception of cafeteria employees, effective March 1, 1976, and for a full increment for all eligible employees to be paid January 1, 1976. It also provided that all provisions in the agreement between the parties for the period July 1, 1972 to June 30, 1975 should be continued. Sections 1 and 2 of article IV of the agreement provide that a salary schedule attached thereto governs all annual and school year full-time employees, and the wages of hourly employees. Section 7 of the same article provides:

"The Board will raise the salary of those promoted to a higher grade to the appropriate step in the higher grade which includes one full increment in the grade from which the employee was promoted in addition to the employee's salary in the lower grade. If this results in a red circle salary in the higher grade, the employee's salary will be increased to the amount in the next consecutive step in the higher grade."

Section 8 of article IV provides, in relevant part:

---

4. The parties, however, did not seek to have the Attorney-General made a party to this proceeding pursuant to section 71 of the Executive Law (see *Matter of Carter v Carter,* 58 AD2d 438, 442, n 1).

"The annual salary of employees (annual and school year) who qualify for longevity will be increased by the amount of the longevity factor, effective on the first day of the calendar quarter following the anniversary date for such qualification.

"For every ten consecutive years of service (10-20) one additional longevity factor will be granted, regardless of placement on the salary schedule. Date of permanent appointment to be the date used in computing consecutive service."

Section 4 of article IX of the contract, which deals with retirement, provides:

"The State Career Retirement Plan, Section 75G, of the Retirement and Social Security Law shall be continued.

"The State Retirement Plan known as Section 75I of the Retirement and Social Security Law shall be provided to become effective January 1, 1974."

Subdivision A (par [2]) of article XI defines "grievance" as follows:

" 'Grievance' shall be limited to a claimed violation, misinterpretation, or inequitable application of the existing agreement, laws, rules, procedures, regulations, administrative orders, or work rules of the Board or a department thereof; provided, however, that such terms shall not include an action relative to disciplinary proceedings or any other matters which are otherwise reviewable pursuant to law, or any rule or regulation having the force and effect of law."

Subdivision C (par [3], cl [a]) of article XI, which governs grievance procedures, provides for a third stage which authorizes an appeal by an employee to arbitration after completion of the prior two stages, upon written notice within 10 days after the receipt of the determination by the Superintendent of Schools. Clause (a) of paragraph (3) contains the following language:

"Arbitration shall be advisory except that if the grievance involves a dispute as to the interpretation of any provision of the written agreement as it applied to the grievance, either party may request interpretation of the provision of the agreement which is in dispute in an arbitration which shall be final and binding upon the parties thereto only with respect to that part of the Arbitrator's award which decides the issue of the interpretation. The Arbitrator shall be so advised in the written statement referred to herein in the appeal procedure."

In a demand for arbitration by the American Arbitration Association, a copy of which was sent to the petitioner with a covering letter dated June 7, 1976, the respondents sought as a remedy "Compliance with Contract" and set forth as the details of their demand the following:

"The Memorandum of Agreement between the Civil Service Employees of the Yonkers City School District and the Board of Education, dated July 8, 1975 and ratified by Resolution #3A, July 10, 1975, provides for a 5% salary increase for all Unit employees, with the exception of Cafeteria employees, effective 3/1/76. The Memorandum further provides for a full increment for all eligible employees to be paid January 1, 1976.

"In addition to the salary increases and increments specifically provided for in the Memorandum of July 8, 1975, the Memorandum continued 'all provisions in the agreement between the Board of Education and the Civil Service Employees Association for the period July 1, 1972 and June 30, 1975 shall be continued except those inconsistent with the newly negotiated provision, as set forth above.'

"The continuance of the provisions of the agreement includes the continuance of payments of longevity pursuant to Article IV, Section 8 to eligible employees on the first day of the calendar quarter following the anniversary date for such qualification.

"The Board of Education and the Yonkers City School District have made none of the payments agreed to in the Memorandum of Agreement and Contract as set forth above, and by their failure to make such payments have violated both the Memorandum and Contract."

Thereupon the petitioner moved for an order pursuant to CPLR 7503 (subd [b]) to stay the proposed arbitration permanently on the ground that "the matter sought to be arbitrated is illegal and bound by the Emergency Financial Control Act for the City of Yonkers." The respondents answered that the FEA for Yonkers was unconstitutional and cross-moved to compel arbitration.

Thereafter, Special Term granted respondents' cross motion and ordered that arbitration be had of the matters in dispute in the manner set forth in the written arbitration agreement. It is from that order that the board appeals.

### THE APPLICABLE STATUTES

Section 10 of the FEA (L 1975, ch 871, § 2), upon which the petitioner relies to sustain its claim that arbitration of respondents' grievance must be stayed, provides:

"Wage freeze.

"1. Increases in salary or wages of employees of the city and employees of covered organizations which have taken effect since November twentieth, nineteen hundred seventy-five or which will take effect after that date pursuant to collective bargaining agreements or other analogous contracts, now in existence or hereafter entered into, requiring such salary increases as of November twentieth, nineteen hundred seventy-five or as of any date thereafter are hereby suspended. All increased payments for holiday and vacation differentials, shift differentials, salary adjustments according to plan and step-ups or increments for employees of the city and employees of covered organizations which have taken effect since November twentieth, nineteen hundred seventy-five or which will take effect after that date pursuant to collective bargaining agreements or other analogous contracts requiring such increased payments as of November twentieth, nineteen hundred seventy-five as of any date thereafter are hereby, in the same manner, suspended. For the purposes of computing the pension base of retirement allowances, the suspended salary or wage increases and the suspended other payments shall not be considered as part of compensation or final compensation or of annual salary earned or earnable. The suspensions provided herein shall be effective for the first pay period ending on or subsequent to November twentieth, nineteen hundred seventy-five and shall continue until one year thereafter and, to the extent of any determination of the board that a continuation of such suspensions, to a date specified by the board, is necessary in order to achieve the objectives of the financial plan, such suspensions shall be continued to the date specified by such board, which date shall in no event be later than the end of the emergency period."

It should be noted, however, that subdivision 3 of section 3 of the FEA provides:

"Nothing contained in this act shall be construed to impair the right of employees to organize or to bargain collectively."

### APPELLANT'S CONTENTIONS

Citing *Matter of Subway-Surface Supervisors Assn. v New*

*York City Tr. Auth.* (56 AD2d 53) as holding the so-called wage freeze provisions of section 10 of the FEA constitutional, appellant contends in its first point that the sole issue raised by respondents' demand for arbitration is "whether agreements to submit controversies to arbitration are subject to limitation under the State's police power" and it reads the respondents' demand for arbitration as though it were seeking a declaratory judgment invalidating certain portions of the FEA.

Appellant next cites *Board of Educ., Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington* (30 NY2d 122, 130), where the Court of Appeals, speaking through Chief Judge FULD, said that the presumption that public employers "possess the broad powers needed to negotiate with employees as to all terms and conditions of employment" may be rebutted "by showing statutory provisions which expressly prohibit collective bargaining as to a particular term or condition". Appellant then reads the suspension of wage increases in section 10 of the FEA as being such an express prohibition. But that section contains no such express prohibition. Rather, it declares only that certain increases in the salaries of employees which will take effect after a specified date "pursuant to collective bargaining agreements" are *"suspended"* (emphasis supplied). Further, subdivision 3 of section 3 of the FEA, quoted above, declares that nothing in the act shall be construed to impair the right of employees to bargain collectively.

Finally, on this point, appellant contends that since article XI of the agreement, in paragraph (2) of subdivision A, quoted above, "in providing for arbitration of 'grievances', limits the definition of such *term* * * * excluding '* * * an action relative to disciplinary proceedings, or any other matters which are otherwise reviewable pursuant to law'" (emphasis supplied), its refusal to pay the wage increases provided in the agreement is not arbitrable since it is a matter reviewable at law either in an action for breach of contract or in a CPLR article 78 proceeding.

Appellant's second and last point is that the FEA is constitutional as an exercise of the State's police power, citing as authority the *Subway-Surface Supervisors* case (56 AD2d 53, *supra),* decided by this court. Under this point appellant contends that the FEA, as an exercise of the police power, is superior to the statutes which authorize submission to arbitra-

tion of controversies arising out of collective bargaining agreements and that the Legislature's delegation of the administration of the FEA to the Emergency Financial Control Board for the City of Yonkers precludes an arbitrator from directing the appellant to pay the increases called for by the contract. Appellant also argues that to hold that it must submit to arbitration matters comprehended but not included in the control board's financial plan, is to hold that the State, the board and the appellant employer have all divested themselves of their police power.

## RESPONDENTS' CONTENTIONS

Respondents' brief fails to deal with appellant's claim that under the agreement respondents have no right to compel it to arbitrate the grievance arising out of the failure to comply with the provisions of the agreement mandating a wage increase as of March 1, 1976 and the specified increments and longevity payments. Instead they contend that appellant's reliance on section 10 of the FEA violates the constitutional ban of section 10 of article I of the Federal Constitution, which provides: "No State shall * * * pass any * * * Law impairing the Obligation of Contracts". But the authorities respondents cite to support this contention, *Black Riv. Regulating Dist. v Adirondack League Club* (282 App Div 161, revd on other grounds 307 NY 475) and *Carder Realty Corp. v State of New York* (260 App Div 459), are not in point since they do not involve an action by the State stemming from an exercise of its police power, but flow rather from the power of the State to control its public lands and to contract for the construction of public hospital buildings.

Respondents also attempt to distinguish *Home Bldg. & Loan Assn. v Blaisdell* (290 US 398), in which the Supreme Court of the United States upheld State mortgage moratorium statutes which suspended for a limited period of time the right to foreclose on mortgage notes, on the ground that in that case, and in *East New York Bank v Hahn* (326 US 230), the court had declared there was no impairment of the integrity of the mortgage indebtedness itself. But respondents' distinction is invalid, for in the instant case, too, there is no impairment of the collective bargaining agreement, only a temporary suspension of any increases to be paid thereunder.

Respondents next contend that the FEA violates the equal protection of the laws provision of the Fourteenth Amend-

ment of the Federal Constitutuion and section 11 of article I of the State Constitution, because it leaves unimpaired the contractual rights of other contractors with the City of Yonkers, establishing priorities for repayment of such debts, but makes no provision for repayment to public employees of the payment of wage increases suspended by section 10. Respondents attempt to distinguish the language of this court in *Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth.* (56 AD2d 53, 59, *supra),* which found no violation of the equal protection clause in the differential treatment accorded creditors of New York City by the New York State Emergency Moratorium Act for the City of New York (L 1975, ch 874, as amd by L 1975, ch 875) and the New York State Financial Emergency Act for the City of New York (L 1975, chs 868-870). We there found that the distinction in treatment of these two classes of creditors constituted a rational classification, concluding (p 59): "The Legislature could justifiably regard a creditor who loans money to a municipality to possess a claim of different quality from one whose debt arises from wages." Respondents also fail to note the following language of relevance on this point in *Patrolmen's Benevolent Assn. of City of N. Y. v City of New York* (41 NY2d 205, 210): "It suffices in this case to state that the impairment clause and the impairment cases never stripped from the States the power to regulate the terms and conditions of work for municipal employees. Whether couched in terms of emergency power or public policy, a State certainly has warrant to adjust the terms of public employment in order to cope with exigent circumstances. The intimate relation between government and its employees permits flexibility of a kind that is absent from agreements between private parties. More dramatically, the same elasticity is missing from the relationship existing between government and its creditors. (Cf. *Flushing Nat. Bank v Municipal Assistance Corp. for City of N.Y.,* 40 NY2d 731.)"

Respondents next argue that the FEA is unconstitutional because it deprives them of property, the wage raises they would otherwise have received, without due process of law. Respondents cite *Noyes v Erie & Wyoming Farmers Co-op.* (170 Misc 42), which involved the constitutionality of the price-fixing provisions of the Agriculture and Markets Law as applied to milk producers. There the court held, *inter alia,* that the setting up of an equalization fund and compelling contributions to it by milk producers without a prior hearing

involved both an unconstitutional grant of legislative power and a taking of property without due process of law from those compelled to contribute. Here, however, there is no taking of property in the possession of the respondents; there is only a suspension of payment of wage increases which had previously been agreed to. The flaw in respondents' argument is that the right to an increase in wages under a collective bargaining agreement is not a deprivation of property as is the compulsion to contribute to an equalization fund.

Respondents contend, finally, that under the Taylor Law it is clear that the public policy of the State is to require public employers to bargain collectively with their employees and to encourage arbitration as a means to resolve disputes, citing Chief Judge FULD's statement in *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington* (30 NY2d 122, 131, *supra*): "[I]t is the declared policy of the State to encourage 'public employers and * * * employee organizations to agree upon procedures for resolving disputes' ([Civil Service Law] § 200, subd. [c]). And arbitration is, of course, part and parcel of the administration of grievances." But respondents fail to cite authority which supports making this public policy superior to the policy reflected in the FEA of helping cities to avoid bankruptcy and to remain solvent.

### ARBITRATION PROVISIONS OF THE AGREEMENT

We shall deal first with the issue of the arbitrability of the respondents' grievance under the arbitration provisions of the contract. Appellant contends that the provision is not arbitrable because the paragraph limiting the term "grievance" to "a claimed violation, misinterpretation, or inequitable application of the existing agreement, laws, rules, procedures," etc., provides that "such *terms* shall not include * * * any * * * matters which are otherwise reviewable pursuant to law" (emphasis supplied). Appellant claims this makes respondents' grievance not arbitrable because its "refusal to pay the subject increases is reviewable at law, both in an action for breach and in a special proceeding pursuant to CPLR Article 78." But this argument has two flaws. First, it operates on the false assumption that the only possible award an arbitrator could make would be to order immediate payment of the salary increase provided in the agreement in disregard of the provisions of section 10 of the FEA suspending the payment of such

increases for at least one year. But we do not read the grievance sought to be remedied as being so limited, nor do we believe that the arbitrator would be so limited in his potential award. While it is clear that since the FEA is a valid exercise of the police power, the arbitrator is barred thereby from ordering an immediate payment of the increase allotted under the contract, he may, as our Court of Appeals said in *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Federation of Teachers* (40 NY2d 268, 276, *supra),* "fashion the remedy appropriate to the circumstances, if it is determined that the agreement has been breached."

Second, in the instant case, at the time the provision for the 5% wage increase and the payments of increments and longevity payments were agreed to in the collective bargaining process, there was no statute in existence prohibiting the appellant from voluntarily agreeing thereto. Now there is a statute which provides that not only such increases in salary or wages as will take effect after November 20, 1975, but also "step-ups or increments * * * which will take effect after that date * * * are hereby * * * *suspended"* (emphasis supplied). But, although that statutory ban would preclude an arbitrator from fashioning a remedy which would violate the statute, it still leaves room for the arbitrator to deal with the question of what is to be done about such wage increases, step-ups or increments after the statutory suspension, even as extended by the control board, expires.[5]

The word "suspend" is defined in the Merriam-Webster New International Dictionary (2d ed, unabridged, p 2541), in relevant part, as:

"2. To cause to cease for a time, as an action, process, practice, use, etc.; to stop temporarily; as to *suspend* publication, trolley service; to stay, as a hearing; to set aside or make temporarily inoperative; as, to *suspend* the rules or the Habeas Corpus Act; to cause to be intermitted or interrupted in motion, execution, or the like; as, they *suspended* their oars to listen.

"3. To postpone; to defer till later; now usually, to withhold for a time on certain conditions; as, to *suspend* sentence on a convicted man" (emphasis in original).

---

5. The record on appeal in this case shows that the one-year suspension of wage increases in section 10 of the FEA was extended to June 30, 1977 by a vote of the control board at its meeting of May 27, 1976.

Black's Law Dictionary (rev 4th ed, pp 1615-1616) defines "suspend", in relevant part, as follows:

"To interrupt; to cause to cease for a time; to postpone; to stay, delay, or hinder; to discontinue temporarily, but with an expectation or purpose of resumption. * * *

"To cause a temporary cessation, as of work by an employee; to lay off;—not synonymous with remove. *Thomas v City of Chicago,* 194 Ill. App. 526, 529."

Here, if the arbitration is allowed to proceed, the arbitrator would be free to indicate first, when, how or if the increase provided for in the labor agreement is to be reinstituted when the statutory suspension ends. Further, he could deal with the question of whether there is any obligation on the public employer to reimburse the employees subject to the contract for some or all of the money they have not received because of the statutory suspension of wage or salary increases, increments, step-ups and longevity payments. Furthermore, he would be compelled to take notice of the fact that this court, in *Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth.* (56 AD2d 53, 61, *supra),* declared: "We conclude, therefore, that the statute barring the calculation of pension benefits on the wage increase effective under the contract is an unconstitutional impairment of the rights of the employees represented by the petitioner."

We turn now to the question of whether the respondents' demand for arbitration is barred by the language of paragraph (2) of subdivision A of article XI, which declares that the *"terms"* "claimed violation, misinterpretation or inequitable application" of the agreement, laws, rules, etc., of the board or a department thereof to which the term "grievance" is limited, "shall not include an action relative to disciplinary proceedings or any other matters which are otherwise reviewable pursuant to law" (emphasis supplied). The appellant cites no authority to sustain its contention that since the issue here of claimed violation of the contract is one which may be reviewable in an action at law on the contract or an article 78 proceeding, it is not an arbitrable grievance.

We find ambiguity in the language relied upon by the appellant. First, since the word used in the definition of "grievance" in the agreement is "terms" and not "term", as the appellant mistakenly declares in its brief, there is question as to whether the option on the part of either party to a grievance to elect to seek to remedy his claimed grievance by

a court action rather than by arbitration applies to the term "grievance" or only to the terms "claimed violation, misinterpretation or inequitable application of the existing agreement, laws, rules," etc. Second, the general language on which appellant relies is wholly different from the very specific language of the other exclusion from arbitration in the paragraph, "an action relative to disciplinary proceedings". Further, the specific provision appearing later in the paragraph denying "grievance" status to "[t]ermination of employees during the probationary period" and the denial to "the employee or CSEA" of any recourse in such cases "except as may be otherwise provided by law", indicates that neither party interpreted the language relied upon by the appellant as providing that either party, at its option, was free to escape the grievance procedure and its third stage, arbitration, by taking into the courts any grievance which involved a question reviewable pursuant to law. Finally, and more important, is that fact that the effect of accepting the appellant's argument would make the apparent right to arbitration wholly illusory and one, in fact, not binding on either party to the contract, since almost every grievance arising under the contract could be reviewable at law either in an action on the contract or in an article 78 proceeding. (See, also, Wechsler, Toward Neutral Principles of Constitutional Law, 73 Harv L Rev 29-30.) On oral argument, when we asked appellant's counsel to cite an example of a grievance which could not be reviewed at law, he could cite no valid example.

We do not believe that the language in paragraph (2) of subdivision A of article XI was intended by the parties to the contract to allow either party thereto, whenever it wished to avoid the arbitration provisions of paragraph (3) of subdivision C of article XI of the contract, to opt for a court action or proceeding and thus take advantage of the delays and formalities of a judicial proceeding to impede the speedy settlement of the matter which would be available under arbitration. This conclusion is in accord with the public policy manifested in CPLR article 75 of encouraging the use of arbitration in settling disputes arising out of contracts, as well as with the public policy embodied in section 203 of the Civil Service Law of encouraging public employees and employee organizations to agree upon procedures for resolving disputes and to use arbitration therefor, and with subdivision 3 of section 3 of the FEA. (See *Board of Educ. of Union Free School Dist. No. 3 of*

*Town of Huntington v Associated Teachers of Huntington,* 30 NY2d 122, 131, *supra.)*

We conclude, therefore, that there is no basis in the language of the arbitration provisions of the collective bargaining agreement between the appellant and the respondents, for granting a stay of arbitration to the appellant.[6]

In *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Federation of Teachers* (40 NY2d 268, 276, *supra),* the Court of Appeals denied a stay of arbitration and said: "The merits are for the arbitrators to decide. It is also for the arbitrators to fashion the remedy appropriate to the circumstances, if it is determined that the agreement has been breached. In this context, of course, the financial condition of the city and its ability to fund the teaching positions are relevant and may be considered * * *. [T]he parties should proceed to arbitration."

In the instant case, sustaining the denial of the stay of arbitration will allow the arbitrator "to fashion the remedy appropriate to the circumstances". Thus, the arbitrator here could fashion a remedy which preserves the pension rights of the respondents (which he must do under our decision in *Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth.,* 56 AD2d 53, *supra),* and which deals with their right, if any, to restoration of the increases provided for in the collective bargaining agreement without, at the same time, embodying in his remedy provisions which he is without power to include because they are contrary to law or public policy (see *Matter of Niagara Wheatfield Administrators Assn. [Niagara Wheatfield Cent. School Dist.],* 54 AD2d 498, 502).

We now come to the principal issue dealt with by the parties, i.e., the constitutionality of section 10 of the FEA. In

---

6. Although neither side has mentioned it, we note that subdivision C (par [3], cl [a]) of article XI of the contract provides that arbitration "shall be advisory except that if the grievance involves a dispute as to the interpretation of any provision of the written agreement as it applies to the grievance, either party may request interpretation of the provision of the agreement which is in dispute in an arbitration which shall be final and binding upon the parties thereto only with respect to that part of the Arbitrator's award which decides the issue of the interpretation." In *Board of Educ. of Cent. School Dist. No. 1, Town of Clarkstown v Cracovia* (36 AD2d 851, 852) we declared "[w]e can see no compelling reason why article 75 of the CPLR should not be applicable to 'advisory arbitration' if that is what the parties intended." But, since the appellant has not discussed the possible impact of this provision on the arbitrability of the grievance, we do not reach the issue of whether any award in this case will be final or merely advisory.

the one case in which an attack on the constitutionality of an emergency law such as the FEA was based on a refusal under the statute to pay salary increases, our court rejected attacks predicated on the grounds that it unconstitutionally abrogated existing contractual rights or that it violated the equal protection clause *(Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth.,* 56 AD2d 53, 58-60, *supra).* While striking down as a violation of section 7 of article V of the State Constitution that part of section 10 of the New York City FEA which prohibited the calculation of pension benefits based upon the suspended wage increases, our court left standing that part of the judgment appealed from which declared that the wage suspension provisions of the New York City FEA were constitutional. Finally, in this regard, it is well settled that the impairment of contract clause has been held to be a proscription qualified by the power and duty of the States to maintain order and to protect the public welfare *(Home Bldg. & Loan Assn. v Blaisdell,* 290 US 398, *supra).* In *East New York Bank v Hahn* (326 US 230, 232-233, *supra,* affg 293 NY 622), Mr. Justice FRANKFURTER, speaking for the court, said: "A more candid statement is to recognize, as was said in *Manigault v. Springs, supra,* that the power 'which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the * * * general welfare of the people, and is paramount to any rights under contracts between individuals.' 199 U.S. at 480. Once we are in this domain of the reserve power of a State, we must respect the 'wide discretion on the part of the legislature in determining what is and what is not necessary.' *Ibid.* So far as the constitutional issue is concerned, 'the power of the State when otherwise justified,' *Marcus Brown Co. v. Feldman,* 256 U.S. 170, 198, is not diminished because a private contract may be affected."

Our Court of Appeals in *Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y.* (40 NY2d 731) also dealt with and rejected the impairment of contract argument as directed against another aspect of the Legislature's program to help both New York City and the City of Yonkers avoid bankruptcy, the New York State Emergency Moratorium Act for the City of New York (L 1975, chs 874-875). There, the dissenter, Judge COOKE, said (pp 749-750): "Any notion, such as espoused by appellant Flushing, that the contract impairment clause of the United States Constitution (art I, § 10) is

an absolute bar to State action with respect to contracts was conclusively laid to rest over 40 years ago by the United States Supreme Court in *Home Bldg. & Loan Assn. v Blaisdell* (290 US 398, 447)." With respect to this comment Chief Judge BREITEL, speaking for the majority, said (p 739): "One must agree, too, with the dissenting opinion, that the police power (p 749) 'may not be limited or restricted by stipulations in private contracts or in those between private parties and governmental units or agencies.' "

Accordingly, we find no merit in the constitutional attack made on the FEA by the respondents. Nor is there any merit to the deprivation of due process argument made by respondents, since the Legislature in enacting the FEA provisions suspending wage increases for the period of the emergency was, as we have indicated, properly exercising the police power of the State to deal with an emergency that threatened the public welfare.

Hence, if the arbitrator should, in his award, grant a remedy which is in conflict with the ban on payment of wage increases during the period of emergency as contained in the FEA, such a remedy would be unenforceable in the courts as an illegal award, and a refusal of the appellant to comply therewith could then be dealt with by the courts.

The order appealed from should therefore be affirmed.

DAMIANI, J. P., MOLLEN and O'CONNOR, JJ., concur.

Order of the Supreme Court, Westchester County, dated December 30, 1976, affirmed, without costs or disbursements.