*86 OPINION OF THE COURT
Rudolph U. Johnson, J.
The petitioner, Depew Union Free School District, by notice of motion, brings this matter pursuant to CPLR 7505. Petitioner seeks an order of this court vacating an arbitration award dated May 1, 1978, which purportedly settled a grievance between petitioner and respondent, Depew Teachers Organization, Inc., et al.
The underlying grievance involved an alleged violation of section 1 of article 3 of. a collective bargaining agreement which governs the parties herein for the period July 1, 1976 to June 30, 1978.
Section 1 of article 3 provides: "I. Any change in policy which pertains to any terms and conditions of employment for teachers whether or not contained in this agreement will be discussed and negotiated with the DTO.”
An alleged violation arose when a district vice principal who also serves as the chairman of the social studies department, issued a directive limiting to two the number of "independent study units” which may be taught in the social studies curriculum. The arbitrator factually found that the social studies curriculum as revised for 1976-1977 outlined studies "based on 35 weeks of regular studies and exams and in general terms divides the school year into units of instruction during which a given subject matter is covered in time periods ranging from two to nine weeks per unit.”
An "independent study unit” was defined by the arbitrator as an instructional mode which involved "a 'contract’ between teacher and students whereby the student negotiates for a given grade in return for which a given quality and quantity of work must be completed.”
The arbitrator found: that without question the chairman’s directive pertained to the terms and conditions of employment for teachers; that the directive was given without requisite discussion and negotiations; and, therefore, that the directive was in violation of section 1 of article 3 of the agreement and should be rescinded.
Petitioner argues that the underlying dispute is not one which is properly subject to arbitration, as the use of classroom instructional modes is not a "term or condition of employment” and that, therefore, the arbitration award vio *87 lates public policy as it pre-empts a nondelegable duty of petitioner.
Petitioner relies upon subdivisions 3, 4, 13 and 33 of section 1709 of the Education Law as support for its contention that the ultimate authority over instructional modes and their implementation in the classroom rests with petitioner, board of education and its authorized agents.
Respondent maintains that prior to the issuance of the social studies chairman’s directive there was no stated policy limiting the use of this instructional mode. Therefore, respondent continues, the directive now affects a change in the term or condition of employment and having been done without prior discussion or negotiation clearly violates section 1 of article 3.
For some time now the Court of Appeals has wrestled with the problem of defining the breadth of allowable collective bargaining and arbitration between a school board and its teachers.
"Prefatorily, it is important to note that the expansive rule expressed in Board of Educ. v Associated Teachers of Huntington (30 NY2d 122, 130) that, in the absence of statutory provisions which prohibit collective bargaining as to a particular term or condition, any subject matter in controversy between a board of education and its teachers is subject to arbitration under a broad arbitration clause, has been restated, and more accurately, in Syracuse Teachers Assn. v Board of Educ. (35 NY2d 743, 744). In the Syracuse case, it was said that 'collective bargaining under the Taylor Law (Civil Service Law, § 204, subd 1) has broad scope with respect to the terms and conditions of employment, limited by plain and clear, rather than express, prohibitions in the statute or decisional law.’ Yet even this is not the sum of it.
"Public policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate.” (Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’Assn.], 37 NY2d 614, 616-617.)
However, even this additional guide of public policy considerations required further expression: "Incantations of 'public policy’ may not be advanced to overturn every arbitration award that impairs the flexibility of management of a school district. Every collective bargaining agreement involves some relinquishment of educational control by a school district. *88 Only when the award contravenes a strong public policy, almost invariably involving an important constitutional or statutory duty or responsibility, may it be set aside.” (Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven — Comsewogue Union Free School Dist., 45 NY2d 898, 899.)
It appears to this court that under the present posture of decisional law there must first be a valid determination of whether or not the matter in dispute is encompassed within the definition of a "term or condition of employment.” If it is not, it must then be determined if the school district is guided by statute and, therefore, operating under mandated public policy considerations. (See, e.g., Education Law, § 1709.)
If, however, the grievance does involve a "term or condition of employment” then the rules as set forth by the Court of Appeals in Susquehanna and Port Jefferson are applicable. That is, any term or condition of employment in controversy between a board of education and its teachers is a valid subject of arbitration, unless plainly and clearly prohibited by statute or is otherwise violative of strong public policy considerations. (See, also, Civil Service Law, § 204, subd 1, Taylor Law.)
The issue before us then, first turns on whether petitioner’s directive, limiting to two the number of independent study units that may be used in the social study curriculum, affected a change in respondents’ "term or condition of employment”. (See Board of Educ. v Associated Teachers of Huntington, 30 NY2d 122, 127.)
The court finds that it did not. As defined by the arbitrator it is our opinion that independent study contracts are not so much a particular teacher’s instructional technique, but are more a matter of the substantive educational process.
Clearly, matters affecting curriculum are solely within the purview of the school district which is statutorily charged with developing certain educational standards and a course of study by which pupils are to be tested, graded and passed on to the next level. It is, therefore, the petitioner’s nondelegable responsibility to exercise judgment over what instructional modes are most productive in fulfilling curriculum requirements. (See Education Law, § 1709, subds 3, 4, 13, 33.)
In our opinion, the petitioner’s directive regarding the use of independent instructional contracts goes beyond merely affecting the relationship between employer and employee but directly relates to a basic element of educational policy. (See *89 Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 51.)
We would note in passing, that this conclusion does not otherwise impede the necessary academic freedom of the instructor who, as a responsible professional, remains free to develop his or her own instructional techniques and materials, limited only by the curriculum guide lines of the school district.
The court, therefore, finds that the arbitrator erred in his initial determination that this grievance presented a change in the "term and condition of employment” and thus exceeded his authority in rendering his decision.
Accordingly, the petitioner’s motion to vacate the arbitrator’s award is granted and the respondents’ motion to confirm is denied.