STATE of Maine and Bureau of
Alcoholic Beverages, Department
of Finance and Administration

v.

MAINE LABOR RELATIONS BOARD
and Maine State Employees
Association.

Supreme Judicial Court of Maine.

April 9, 1980.

Argued March 17, 1980.

Decided April 9, 1980.

Drummond, Woodsum, Plimpton & MacMahon, P.A., Hugh G. E. MacMahon (orally), Thomas H. Allen, Portland, for plaintiffs.

Wayne W. Whitney, Jr. (orally), Augusta, for Maine Labor Relations Board.

Joseph R. Mackey (orally), Augusta, for Maine State Employees Association.

Before McKUSICK, C. J., and GOD-FREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

McKUSICK, Chief Justice.

The State [1] appeals from the judgment of the Superior Court, Kennebec County, affirming an order of the Maine Labor Relations Board (the Board) that the State cease and desist from refusing to bargain collectively with the Maine State Employees Association (the Union), the certified bargaining agent for retail store clerks employed in the state liquor stores. The State principally challenges the Board's conclusion that the issue of holiday work is a mandatory subject of bargaining between the State and the Union under the State Employees Labor Relations Act, 26 M.R.S.A. § 979 et seq. (1974; Supp.1979). We deny the appeal.

The State's refusal to bargain occurred during ongoing negotiations between the parties concerning a proposed contract for the liquor store clerks. Among the items submitted for collective bargaining by the Union were various proposals relating to holiday work, including work on Washington's Birthday, which had been designated as a holiday for all state employees by the Maine Commissioner of Personnel. By memorandum dated February 6, 1978, the Director of the Bureau of Alcoholic Beverages advised all store managers that state liquor stores would be open for business on Washington's Birthday, February 20, 1978, contrary to the longstanding practice of remaining closed on that holiday. The Union promptly requested orally that the

1. Before both the Board and the Superior Court the State of Maine and its Bureau of Alcoholic Beverages were joined as parties, first as respondents in the prohibited practice proceeding and then as Rule 80B plaintiffs in the Superior Court. This opinion will use the single designation "the State" to refer to both appellants.

stores be kept closed, but made no further attempt to bargain over the issue. The stores did open for business on Washington's Birthday, 1978, staffed by retail store clerks represented by the Union.

Acting on a prohibited practice complaint filed by the Union, the Board determined that the State had violated section 979–C(1)(E) of the Act[2] by refusing to bargain over the issue of holiday work. The Board ruled that the State's unilateral change in a term of employment then under negotiation—by requiring the retail store clerks to work on Washington's Birthday without first negotiating with the Union over the impact of such holiday work on the clerks' "wages, hours, [and] working conditions"[3] —constituted a refusal to bargain. The Board ordered:

> [t]hat the State of Maine and the Bureau of Alcoholic Beverages, Department of Finance and Administration, cease opening State Liquor Stores on days designated State Holidays by the Commissioner of the State of Maine Department of Personnel without negotiating such proposed openings with the bargaining agent(s) for the State Liquor Store employees.

On the State's appeal the Superior Court affirmed the Board's order. The State's timely appeal to this court followed.

## I.

Before this court the Board has participated fully as an appellee by filing a

brief and arguing orally. At oral argument, the court on its own initiative questioned whether the Board is a proper party defendant to a Rule 80B appeal from a decision of its own. We considered that inquiry appropriate in light of our recent decision in *Inhabitants of Town of Boothbay Harbor v. Russell*, Me., 410 A.2d 554 (1980), in which we remanded for dismissal a complaint brought in the Superior Court against a municipal zoning board of appeals. Contrary to the result reached in *Boothbay Harbor*, we conclude that the Maine Labor Relations Board is authorized by the governing statutes to participate as a party in these proceedings. *See Galloway Township Bd. of Educ. v. Galloway Township Educ. Ass'n*, 78 N.J. 25, 33–35, 393 A.2d 218, 222–24 (1978); *Barrington School Comm. v. State Labor Relations Bd.*, R.I., 388 A.2d 1369, 1372 (1978).

Unlike a municipal zoning board of appeals, which "is established . . . for the purpose of hearing appeals," 30 M.R.S.A. § 4963(1) (1978), and which "has no responsibility for enforcement," *Boothbay Harbor, supra* at 560, the Board, in addition to its quasi-judicial function of adjudicating prohibited practice complaints, 26 M.R.S.A. § 979–H, and reviewing determinations of bargaining units or agents, *id.* § 979–G(2), is given a variety of other powers by the State Employees Labor Relations Act.[4]

---

2. 26 M.R.S.A. § 979–C(1) (1974) provides in part:

The [State of Maine], its representatives and agents are prohibited from:

. . . . .

E. Refusing to bargain collectively with the bargaining agent of its employees as required by section 979–D; . . .

3. 26 M.R.S.A. § 979–D(1) (1974) provides in part:

[I]t shall be the obligation of the [State] and the [Union] to bargain collectively. "Collective bargaining" means, for the purpose of this chapter, their mutual obligation:

. . . . .

E.

(1) To confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession. All mat-

ters relating to the relationship between the employer and employees shall be the subject of collective bargaining, except those matters which are prescribed or controlled by public law. Such matters appropriate for collective bargaining to the extent they are not prescribed or controlled by public law include but are not limited to:

. . . . .

(b) Work schedules relating to assigned hours and days of the week;

. . . . .

4. Although this discussion is limited to a consideration of the Board's powers as delineated in the State Employees Labor Relations Act, 26 M.R.S.A. § 979 *et seq.*, the Board also exercises substantially equivalent powers under the Municipal Public Employees Labor Relations Law, 26 M.R.S.A. §§ 961–974 (1974; Supp.1979) and the University of Maine Labor Relations Act, *id.* §§ 1021–1035 (Supp.1979).

Specifically, the Board is given two significant prosecutorial duties. First, the Executive Director of the Board is responsible for screening complaints, and may dismiss those that he believes fail to state a claim under the Act. 26 M.R.S.A. § 979–H(2). Second, section 979–H(5) provides that if a party fails to comply with an order of the Board, "then the party in whose favor the order operates *or the [B]oard* may file a civil action in the Superior Court . . . to compel compliance" (emphasis added). Since any such complaint for review of a decision or order of the Board must be consolidated with any Board-initiated enforcement action that is pending at the same time, *id.*, it is reasonable to conclude that the legislature viewed the Board as an appropriate party to the review action.

There is good reason to accept the Board as a party in review proceedings. While the union and the public employer can be expected to press their respective interests, the presence of the Board insures that the broad public interest, which may differ from the interests of the particular public employer, will be adequately represented. The authority to participate in review proceedings also goes hand in hand with other public responsibilities imposed upon the Board, such as rulemaking, 26 M.R.S.A. § 979–G(1); recommending to the legislature amendments to the labor relations statutes, *id.* § 979–J(2); settling bargaining unit questions and conducting representation elections, *id.* §§ 979–E, 979–G(2); and assigning mediators, factfinders, and arbitrators to resolve collective bargaining disputes, *id.* § 979–D(2), (3), (4).

█ The Board's special functions and statutory powers make it appropriate to permit this particular governmental agency to participate in court actions brought by others to review its quasi-judicial decisions. We do not, however, mean to suggest that the Board is either a necessary or an indispensable party, *see* M.R.Civ.P. 19, or that it should routinely elect to take an active part in every review proceeding.

## II.

We come now to the principal question raised on the State's appeal: Is holiday work a subject about which the State has a duty to bargain collectively with the Union because of its impact on the retail store clerks' wages, hours, and working conditions? We answer in the affirmative.

In at least three significant respects, the holiday operation of the state liquor stores has an impact on the clerks' "wages, hours, [and] working conditions," which in turn are mandatory subjects of collective bargaining. *See* 26 M.R.S.A. § 979–D(1)(E), n. 3 above. First, if at least some of the clerks must work on holidays, the Union might well desire to negotiate for a premium rate of pay for performing such work, an issue obviously involving the employees' "wages." Second, the Union might also desire to bargain about compensatory time off ("comp time") for holiday work, an issue related both to "hours" and "working conditions," as well as specifically to "[w]ork schedules relating to assigned hours and days of the week." *See* section 979–D(1)(E)(1)(b), n. 3 above. Third, regardless of what the State might, in negotiations, offer concerning premium pay and "comp time," the Union might take the negotiating position that the clerks should not be required to work *at all* on some or all holidays; both "hours" and "working conditions" are implicated in requiring employees to work at all on holidays that they may wish to celebrate for religious, patriotic or family reasons.

█ The Board ordered the State to "cease opening" its liquor stores on holidays without first "negotiating such proposed openings" with the Union. From the discussion contained in the Board's written decision, it is clear to us, as it was to the Superior Court in affirming the Board's order, that the Board meant to limit the scope of its bargaining order to the *impact*

of holiday openings on the retail store clerks' wages, hours, and working conditions. We therefore construe the above-quoted language as referring only to negotiations about impact of the openings on those mandatory subjects of collective bargaining. Under the power granted the Superior Court and this court by 26 M.R.S.A. § 979–H(7) (Supp.1979), § 6 (1974), we for clarification modify the language of the order in accordance with our reading of the Board's intent; and then we affirm that order as so modified.

■ In declaring holiday work to be a subject within the scope of mandatory bargaining, the Board relied—and properly so—on *Amalgamated Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965), in which the United States Supreme Court held that

> the particular hours of the day and the particular days of the week during which employees shall be required to work are subjects well within the realm of "wages, hours, and other terms and conditions of employment" about which employers and unions must bargain.

*Id.* at 691, 85 S.Ct. at 1602. *See Singer Mfg. Co. v. NLRB*, 119 F.2d 131, 136 (7th Cir. 1941). In applying the terms of our state labor relations laws, this court has previously found "persuasive" the construction placed on the National Labor Relations Act by federal courts, *Churchill v. School Administrative Dist. No. 49 Teachers Ass'n*, Me., 380 A.2d 186, 192 (1977); *Lewiston Firefighters Ass'n v. City of Lewiston*, Me., 354 A.2d 154, 164 (1976), particularly where provisions of the state law analogous to those of the federal law were involved, *Caribou School Dept. v. Caribou Teachers Ass'n*, Me., 402 A.2d 1279, 1283 (1979). Furthermore, the construction placed on the statute by the Board, as the agency charged with its enforcement, should be accorded "considerable deference" by a reviewing court. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). *Cf. In re O'Donnell's Express*, Me.,

260 A.2d 539 (1970) (construction placed on motor carriers statute by Public Utilities Commission).

■ The State nevertheless urges this court to declare that certain subjects—such as the days of operation of state agencies—are exempted from the duty to bargain because they remain the inherent prerogative of state government to determine solely as a matter of public policy, unfettered by pressures from employee bargaining agents. The legislature, however, rejected just such a proposed "management prerogative" exception when it was considering the original enactment of the State Employees Labor Relations Act in 1974. *See* 1974 Leg. Rec. 1829 (remarks of Sen. Haskell), 1830 (remarks of Sen. Tanous), 1832 (remarks of Sen. Brennan), 1835 (Senate Amendment "A" to L.D. 2314 indefinitely postponed by a 17–10 vote). As a consequence, there is nothing in the Act in any way comparable to the "educational policies" exception found in the Municipal Public Employees Labor Relations Law, *see* 26 M.R.S.A. § 965(1)(C) (1974).[5] Thus the State's reliance on cases decided under that exception, *see*, e. g., *City of Biddeford v. Biddeford Teachers Ass'n*, Me., 304 A.2d 387 (1973), or counterpart provisions in the laws of other jurisdictions, is entirely misplaced. To read into the Act an *implied* "management prerogative" exception, as is urged upon us by the State, would be to disregard *pro tanto* the *express* legislative intent to promote in the public sector "collective bargaining for terms and conditions of employment." *See* 26 M.R.S.A. § 979 (1974).

■ Having correctly determined that a duty to bargain collectively with the Union about holiday work could, and in this case did, arise, the Board went on to decide that the State violated that duty by requiring the retail store clerks, contrary to a longstanding employment practice, to work on Washington's Birthday in 1978—while the Union's proposals concerning holiday work were on the bargaining table and negotiations were in progress, and even af-

---

**5.** 26 M.R.S.A. § 965(1)(C) (1974) provides that "public employers of teachers shall meet and

consult but not negotiate with respect to educational policies."

ter the Union had asked the State not to open the stores that day. We agree that such conduct was a violation of the State's duty to bargain in good faith, 26 M.R.S.A. § 979–C(1)(E). In *NLRB v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), the Supreme Court affirmed the principle that under the federal counterpart of section 979–C(1)(E), an employer's unilateral change in conditions of employment then under negotiation is a clear violation of the duty to bargain in good faith because it tends to undermine the bargaining process, in contravention of the public policy expressed in the labor act. The considerations involved in *Katz* are fully applicable to public sector labor relations, as the Board and the Superior Court below and the courts in many other jurisdictions have recognized. *E. g., Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm'n*, Mass., 389 N.E.2d 389 (1979); *Detroit Police Officers Ass'n v. City of Detroit*, 391 Mich. 44, 214 N.W.2d 803 (1974); *West Hartford Educ. Ass'n v. DeCourcy*, 162 Conn. 566, 295 A.2d 526 (1972). Any implication from the Union's conduct that it waived its proposal to bargain over the issue of holiday work is refuted by its oral request prior to February 20, 1978, that the State keep the stores closed on that day. The Board's factual rejection of the State's waiver contention was not "clearly erroneous." *See* 26 M.R.S.A. § 979–H(7) (Supp. 1979).

Finally, we reject the State's argument that the subject of holiday work is excepted from the duty to bargain because the matter is "prescribed or controlled by public law," 26 M.R.S.A. § 979–D(1)(E), n. 3 above. The obvious purpose of that exception is merely to "prevent . . . a term of a collective bargaining agreement from being in violation of existing law." *Pennsylvania Labor Relations Board v. State College Area School Dist.*, 461 Pa. 494, 509,

337 A.2d 262, 269 (1975). The parties to collective bargaining are prohibited from negotiating an agreement, even though it concerns "wages, hours, [or] working conditions," where that agreement "would be in violation of or inconsistent with any statutory directive." *Id.* The statute that the State claims "prescribes" or "controls" holiday store opening, 28 M.R.S.A. § 154 (Supp. 1979),[6] does not support that claim. Rather, it provides a perfect illustration of the distinction between what *is* excluded from collective bargaining by the "prescribed or controlled" exception and what *is not.* Section 154 contains a positive directive that state liquor stores may be open only between 9 a. m. and midnight. Collective bargaining that would have the effect of extending business hours beyond those statutorily prescribed limits is prohibited. On the other hand, section 154 also spells out the general power the manager of any store must have in deciding when to open for business; that power, along with those with which the state liquor commission is invested by *id.* § 53(7) (power to "sell at retail in state stores") and *id.* § 151 (power to lease facilities for the sale of liquor), must be exercised within the environment of collective bargaining as to "wages, hours, [and] working conditions." That portion of section 154 contains no statutory directive that would be violated by permitting collective bargaining to proceed in its normal course. "The mere fact that the [legislature] granted the prerogative [to set business hours] to the employer does not exclude the possibility that the decision to exercise that prerogative was influenced by the collective bargaining process." *Pennsylvania Labor Relations Board v. State College Area School Dist., supra* at 509, 337 A.2d at 269. As the New York Court of Appeals said in *Board of Education v. Associated Teachers of Huntington*, 30 N.Y.2d 122, 129, 331 N.Y. S.2d 17, 23, 282 N.E.2d 109, 113 (1972),

---

6. 28 M.R.S.A. § 154 (Supp.1979) provides in part:

State retail liquor stores and state agency stores may be open for the sale and delivery of liquor between the hours of 9 a. m. and midnight in municipalities and unincorporat-

ed places which have voted affirmatively on section 101, subsection 1. The State Liquor Commission shall establish the hours of operation of each state retail liquor store and state agency store.

"there is no reason why the mandatory provision [for collective bargaining] should be limited, in any way, except in cases where some other applicable statutory provision explicitly and definitively prohibits the public employer from making an agreement as to a particular term or condition of employment."

In sum, we affirm the Board's ruling that the State may not modify its prior practice of closing state liquor stores on holidays without first negotiating with the Union the consequences of that change upon the wages, hours, and working conditions of the employees working in those stores.

The entry will be:

Appeal denied.

Judgment affirmed.

On remand the Superior Court shall enter the following judgment: Enforcement ordered of the Maine Labor Relations Board's decision, modified for purposes of clarification, as follows:

That the State of Maine and the Bureau of Alcoholic Beverages, Department of Finance and Administration, cease opening state liquor stores on days designated state holidays by the Commissioner of the State of Maine Department of Personnel without negotiating the impact of such proposed openings upon the wages, hours, and working conditions of the state liquor store employees, with their collective bargaining agent(s).

All concurring.