**BANGOR WATER DISTRICT**

v.

**MAINE LABOR RELATIONS BOARD.**

Supreme Judicial Court of Maine.

Argued Jan. 13, 1981.

Decided April 7, 1981.

Rudman & Winchell, Gerald E. Rudman (orally), Richard E. Byer, Phillip D. Buckley, Bangor, for plaintiff.

Wayne W. Whitney (orally), Maine Labor Relations Board, Augusta, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and ROBERTS, JJ.

ROBERTS, Justice.

On January 18, 1980, the members of the Maintenance, Operations and Service Bargaining Unit of the Bangor Water District voted on whether Council 74, American Federation of State, County and Municipal Employees, should serve as their bargaining agent. The executive director of the Maine Labor Relations Board, who supervised the election, set aside a challenged ballot. The union won the election by one vote. On the Water District's appeal to the Board, the Maine Labor Relations Board affirmed the executive director's certification, and the Superior Court, Penobscot County, affirmed the Board's order. The Water District now requests this court to reverse the lower court and order the ballot counted. We decline to do so and affirm the judgment.[1]

The ballots contained two choices: "I desire to be represented by Council 74, AFSCME" and "I desire NO REPRESENTATION." Directly under each choice was a large box. The instructions told the voter to select his choice by placing an "X" or "✓" in one of the boxes and warned that the ballot must contain no other marks. Of twenty-three eligible voters, twenty-two cast ballots. The executive director counted eleven votes for and ten against representation. Rather than containing the authorized cross or check, the disqualified ballot had the word "No" written in the box under the "no representation" choice.

In affirming the executive director's certification of the election results, the Board gave two grounds for disqualifying the challenged ballot. First, in light of the negative phrasing of the choice "I desire no representation," the voter's intent in answering "no" was ambiguous, and, the Board reasoned, it should not speculate on

1. In *State v. Maine Labor Relations Board*, Me., 413 A.2d 510 (1980), we held that the Board is a proper party in proceedings for review of its decisions. There, the complaint also named the employees' association as a defendant. In *Baker Bus Service, Inc. v. Keith*, Me., 416 A.2d 727 (1980), the complaint named as sole defendants the individual board members in their official capacity, although naming them individually was unnecessary. M.R.C.P. 25(d)(2). In *Baker Bus* the union appeared as intervenor. In the present case, only the Board is named as a defendant, although the union was served with a summons and complaint pursuant to M.R.C.P. 80B(a). In view of our disposition of this case, we need not be concerned that the union has neither been named as a defendant nor moved to intervene.

what the vote could mean. Second, the unauthorized and unusual marking on the ballot could reveal the voter's identity, especially since only that ballot of the twenty-two cast contained an unauthorized mark. The possibility of identifying the voter, the Board concluded, could defeat the purpose of holding secret elections. The Superior Court focused on the second consideration, applying to it the principle from general election cases that a ballot may not contain any distinguishing marks. The court then concluded that whether the mark was distinguishing was a question of fact on which it must defer to the Board.

The Water District premises its contentions on appeal on the Board's policy, as stated in its regulations, that "ballots shall be liberally construed in favor of validity." M.L.R.B. Reg. ch. 3 § 6(B) (1978). Accordingly, the Water District argues, because there was no evidence that the ballot revealed the voter's identity, the unauthorized word should not disqualify the vote. Furthermore, the Water District contends, the voter's intent to vote against the union was clear and should be given effect despite "minor irregularities" in the voting method. Therefore, it requests that we find as a matter of law that the vote should be counted against representation.

■ Two considerations compel us to decline to take this step. First, although the parties cite cases concerning the validity of ballots in general elections, we see the issue here to be one of administrative law. Consequently, our role in reviewing the Board's decision is limited. *See Baker Bus Service, Inc. v. Keith*, Me., 416 A.2d 727 (1980).

■ The Board is authorized to make procedural rules, 26 M.R.S.A. § 968(3) (Supp.1980), and we should defer to the Board's interpretation of those rules, pro-vided its interpretation is reasonable. The Board's rules for representational elections allow it to disqualify ballots that "do not clearly reveal the intent of the voter." M.L.R.B. Reg. ch. 3 § 6(B) (1978).[2] In this election the ballot clearly instructed the voter how to register his vote. The voter failed to comply with those instructions. The Board is entitled to require compliance with its rules, especially where, as here, their purpose is to avoid the possibility of ambiguity in voting. Therefore, the Board may properly disregard a noncomplying ballot unless the voter's intent is unmistakably clear.

Second, we must disagree with the Water District's contention that the voter's intention is unmistakably clear as a matter of law. The Water District urges us to treat the double negative resulting from the "no" vote as a clear expression of intent to vote against the union, pointing to the common usage of double negatives to express negative desires as well as the availability of the other choice on the ballot to vote for representation. We acknowledge that, although incorrect, double negatives are frequently used in common speech to denote negative statements. We cannot hold as a matter of law, however, that an unmistakably clear intent to do so appears when the voter ignores the ballot's instructions and writes "no" in response to the statement "I desire no representation." Instead, we agree with the Board that two interpretations are possible. The voter may have intended to vote against representation, as the Water District contends. Alternatively, he may have intended to vote against the "no representation" choice and thus for the union. We cannot say that the second interpretation is irrational.

2. M.L.R.B. Reg. ch. 3 § 6(B) states in full: Void Ballots—Ballots which have been mutilated, spoiled, marked with more than one choice, or which do not clearly reveal the intent of the voter may be considered "void ballots" and, when determined as such, shall not be counted for or against any proposition appearing on the ballot, provided that ballots shall be liberally construed in favor of validi-ty. The original determination of "void ballots" status will be determined by the Executive Director or person duly designated by the Board to conduct the election and to supervise the counting of ballots. Any party aggrieved by a "void ballot" ruling may appeal pursuant to § 968, ¶ 4, § 979–G, ¶ 2, or § 1028, ¶ 2, as appropriate.

Our review of the Board's findings is governed by 26 M.R.S.A. § 972, which makes its determination on questions of fact final in the absence of fraud. See 26 M.R.S.A. § 968(4) (Supp.1980); *Baker Bus Service, Inc. v. Keith*, Me., 416 A.2d 727, 730 (1980). No fraud is alleged. Therefore, we must affirm the judgment.

The entry will be:

Judgment affirmed.

All concurring.