**STATE of Maine**

v.

**MAINE STATE EMPLOYEES ASSOCIATION and Maine Labor Relations Board.**

**MAINE STATE EMPLOYEES ASSOCIATION**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued March 1, 1982.

Decided April 6, 1982.

Michael E. Ryan (orally), Dept. of Personnel, Division of Emp. Relations, Augusta, for plaintiff.

John J. Finn (orally), Shawn Keenan, Augusta, for Maine State Emp. Ass'n.

Marc P. Ayotte (orally), Augusta, for Maine Labor Relations Bd.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

CARTER, Justice.

The State appeals from a judgment of the Superior Court, Kennebec County, which affirmed the decision of the Maine Labor Relations Board (MLRB) that proposals to reclassify and reallocate certain groups of employment positions in state service are mandatory subjects of bargaining under the State Employees Labor Relations Act, 26 M.R.S.A. §§ 979–979–P. We sustain the appeal, vacate the judgment, and remand with instructions.

The Maine State Employees Association (MSEA) is the certified or recognized bargaining agent for five state employee bargaining units. Anticipating the June 30, 1981, expiration of collective bargaining agreements between the employer-State and these units, MSEA and the State commenced negotiations on November 5 and 6, 1980, for a successor agreement. During the course of these negotiations, MSEA presented proposals seeking to reclassify more than twelve groups of positions and to reallocate more than one hundred specific classifications.[1] These proposals would re-

---

1. In its decision, the MLRB defined classification and reclassification as "the assignment or reassignment, respectively, of a position or group of positions to an occupational classification which is appropriate for compensation and employment purposes." A classification is thus the characterization of a particular job in terms of a more generic name. For example, the duties performed by employee A might be

quire resolution through the collective bargaining process of particular requests for reclassifications and reallocations. The State, however, insisted that classifications and allocations are not mandatory subjects of bargaining under 26 M.R.S.A. § 979–D(1)(E), and it refused to negotiate over the proposals. MSEA filed with the MLRB a prohibited practices complaint against the State, alleging that the State violated 26 M.R.S.A. §§ 979–C(1)(A) and (E), and requesting that the Board order the State to negotiate on the classification and allocation proposals. (MLRB Case No. 81–44.) The State, in turn, filed a prohibited practices complaint against MSEA claiming that MSEA had insisted that the State bargain over the proposals in violation of 26 M.R.S.A. § 979–C(2)(B). (MLRB Case No. 81–56.) Because, the State asserted, these issues are not mandatory subjects of bargaining, MSEA's conduct, resulting in an impasse in the negotiations, was illegal.

After consolidating these two cases, the Board held a hearing which extended over several days. A decision was issued on September 21, 1981, finding that classifications and allocations were in fact mandatory sub-

jects of bargaining under section 979–D(1)(E). It therefore ordered the State to negotiate with MSEA over its proposals, and dismissed the State's complaint in Case No. 81–56.

Pursuant to M.R.Civ.P. 80B and 26 M.R.S.A. § 979–H(7), the State commenced an action in the Superior Court to review the Decision and Order of the Board. (CV–81–472.) Several weeks later, MSEA also filed a complaint in the Superior Court seeking an order that would compel the State to comply with the Order of the MLRB that it must bargain over classification and allocation. (CV–81–499.) *See* § 979–H(5). These two cases were ordered consolidated. *See id.* The court subsequently issued a judgment affirming the decision and order of the MLRB.[2]

■ The State has seasonably appealed from the judgment entered in both cases.[3]

■ Title 26 M.R.S.A. § 979–D(1)(E)(1) requires the public employer and the bargaining agent[4] to bargain collectively with respect to matters of wages, hours, working conditions, and contract grievance arbitra-

such that A should be designated, or classified, as "Secretary II."

An allocation or reallocation is "the assignment or reassignment, respectively, of a classification to the appropriate grade in the compensation plan." For example, the assignment of the classification, Secretary II, to pay range 17 is an allocation.

2. The court's order also denied the relief sought by "the Plaintiff." Because this single order disposed of both consolidated cases, it was entered on the docket of both CV–81–472, the State's action against MSEA and the MLRB, and CV–81–499, MSEA's action against the State. The literal effect of this order is anomalous as it both affirms the Board's order but denies enforcement. Even though the order does not appear to grant specific relief to MSEA, it does clearly deny specific relief to the employer, which we find to be error.

3. *But see* note 2 *supra*, raising the possibility, which we do not explore, that the lower court granted no relief adverse to the State in CV–81–499.

We also note that the Board has participated fully as an appellee by filing a brief and presenting oral argument. Because the State Employees Labor Relations Act vests the Board

with prosecutorial duties, 26 M.R.S.A. §§ 979–H(2) and 979–H(5), active participation of this kind is warranted in selected review proceedings. *See State v. Maine Labor Relations Board*, Me., 413 A.2d 510, 512–13 (1980). Such participation, however, should not be routine or automatic. *See id.* at 513. Rather, the Board must exercise judgment and discretion so as to assume an active role where there exist public interests that are different from the interests of the parties themselves. The need for the considered ministrations of the public agency is clear in that situation in order that the reviewing courts may render a decision predicated upon a full perspective of the issues. Where, on the other hand, the positions urged by the Board in review matters are merely cumulative of those presented by other parties to the action, where the interests promoted by the Board are adequately represented by the parties, or where the Board's special enforcement or prosecutorial powers are not implicated, participation by the Board may well be unjustified.

4. The State and MSEA are, respectively, the public employer of and the bargaining agent for the relevant bargaining units in this case. *See* 26 M.R.S.A. §§ 979–A(1), (5).

tion. Section 979–D(1)(E)(2), however, provides that section 979–D(1)(E)(1) "shall not be construed to be in derogation of or contravene the spirit and intent of the ... personnel laws." Thus, as we give these words of limitation their plain and ordinary meaning, see *Paradis v. Webber Hospital*, Me., 409 A.2d 672, 675 (1979), the duty to bargain collectively, established in section 979–D(1)(E)(1), does not extend to those occasions where such negotiations would restrict or obstruct the force and operation of the personnel laws.

The procedure governing review of any request for reclassification and reallocation is prescribed in 5 M.R.S.A. § 593 (Supp. 1981). The penultimate paragraph of this statute reads:

> Any request for classification of positions, the allocation of new positions or the reallocation of existing positions in the classified service or the unclassified service, shall be processed by the Commissioner of Personnel and the commissioner's determination made within 45 days from the date of filing the request with the Department of Personnel. Any employee or appointing authority that is a party to the request may appeal to the State Personnel Board within 10 days after the expiration of the 45 days allotted for the process of such requests for hearing and review. The board shall examine and review such appeal and make such changes as provided in this section. The board's decision in the appeal shall be given within 30 days after the hearing on the appeal, has been concluded.

These particular terms were added to section 593 in 1977 in order to expedite the review process and thus to minimize delays in alleviating the inequities associated with an improper classification or allocation. Leg.Doc. 1610, 108th Leg. "Statement of Fact" (1977).[5] *See also* 5 M.R.S.A. § 551–A (Supp.1981), enacted in P.L.1981, c. 289, § 1, stating the purpose of the Personnel Law, 5

M.R.S.A. §§ 551–903, to be the "hiring and retaining [of] the best person for a position *as quickly as possible*. To this end, all state agencies *shall take steps to speed up handling of matters subject to*, and to reduce and simplify the procedures and paperwork required by, *the Personnel Law*." (Emphasis added.)

Thus, the Personnel Law, through section 593, imposes strict time constraints on the processing of requests for reclassifications and reallocations. Indeed, the very purpose underlying the 1977 enactment of the penultimate paragraph of section 593 was to mandate *the speedy review* of such requests. Under this section, the Commissioner of Personnel must issue a ruling on the request for classification or allocation within forty-five days of its filing. Further, a review by the State Personnel Board may not exceed thirty days following the hearing. Thus, the matter can be out of the employee's hands for a total of no more than seventy-five days before he or she is entitled to final agency action.

A review of the State Employees Labor Relations Act, on the other hand, clearly demonstrates that the statutory collective bargaining mechanism is not amenable to temporal restrictions. Under section 979–D(1)(B), negotiations must commence within ten days after a party has requested a meeting for collective bargaining purposes, absent time arrangements agreed upon in a prior written contract. After good faith negotiations have commenced, however, the achievement of an agreement is a function not of statutory time requirements but rather of the parties' ability to agree. The statute is clear that "neither party shall be compelled to agree to a proposal or be required to make a concession." § 979–D(1)(E)(1). It is thus axiomatic that the statute does not compel an accord within a specific period of time. Similarly, even if one of the negotiating parties invokes the

---

5. The specific pertinent language of the Statement of Fact is:

> State employees subject to the reclassification process should receive prompt consideration. Employees cannot work 'out of class'

without creating inequities which are contrary to the intent of the Personnel Law and the doctrine of 'equal pay for equal work.' Delays in processing should be minimized.

mediation procedures set forth in section 979–D(2), an agreement is not guaranteed, because the mediator or mediators are vested with statutory power only to

> exert every reasonable effort to encourage the parties to the dispute to settle their differences by conference or other peaceful means. If the mediator or mediators are unable to accomplish this objective and to obtain an amicable settlement of the dispute between the parties, it shall then be the duty of the mediator or mediators to advise the parties of the services available to assist them in settlement of their dispute. At this time, the mediator or mediators shall submit a written report to the executive director [of the MLRB] stating the action or actions that have been taken and the results of their endeavors.

26 M.R.S.A. § 965(2)(E) [made applicable to the State Employees Labor Relations Act by *id.* § 979–D(2)(B) ].

Also available to the public employer and the bargaining agent as a method of conflict resolution is the fact-finding process. This may be invoked in combination with mediation services. In this form, the fact-finding panel must "hear the contending parties to the controversy" and may require testimony of witnesses and the production of documentary and other evidence pertinent to the issues. 26 M.R.S.A. § 965(3)(B) [made applicable to the State Employees Labor Relations Act by *id.* § 979–D(3)(C) ].

Finally, if the parties are unable to achieve a settlement within forty-five days after the fact-finding panel submits its findings and recommendations, "either party may petition the board to initiate compulsory final and binding arbitration of the negotiations impasse." § 979–D(4)(B). Upon receiving this petition, the executive director is charged with determining whether the parties have reached an impasse in their negotiations. *Id.* If an impasse is found, an arbitrator must be selected; this process may consume more than fifteen days. *Id.* Once chosen, the arbitrator must issue a report to the parties within thirty days, unless that time period is extended by the executive director. § 979–D(4)(E). Further, if the controversy is over salaries, the arbitrator's report is advisory and is not binding on the parties. § 979–D(4)(D).

■ We set out this procedural outline of the collective bargaining process under the State Employees Labor Relations Act in order to bring into clear focus the long and arduous path over which negotiating parties may be required to travel before a settlement may be finally consummated. Title 5 M.R.S.A. § 593, in contradistinction, is explicitly forged to bring any review proceeding to an expeditious conclusion.

MSEA seeks to require the reclassification of more than twelve groups of positions and the reallocation of more than one hundred specific classifications. We conclude that to require resolution of particular requests for reclassifications and reallocations through the collective bargaining process would "be in derogation of or contravene the spirit and intent" of section 593 of the Personnel Law. It would be impossible to glean any assurance that the negotiating parties would be capable of satisfying the legislative directive of expediency required in such matters. Indeed, submission of such requests to the negotiating parties on the condition that prompt accord be reported would only do violence to the principle that no party may be compelled to agree to a proposal or be required to make a concession. *See* § 979–D(1)(E)(1).

An agreement in the collective bargaining process is the product of good faith negotiations necessarily unhampered by significant restrictions of time. Determination of classifications and allocations through the section 593 mechanism, an administrative process, is, on the other hand, subject to deadlines. To allow such requests to be pursued through the machinery of collective bargaining could fatally compromise the fundamental legislative concern for expeditious resolution of such requests. As this would inhibit speedy determination of such requests, and thus be in derogation or contravention of the spirit and intent of the Personnel Law embodied

in section 593, we hold that requests for reclassifications and reallocations are not mandatory subjects of collective bargaining within the meaning of 26 M.R.S.A. § 979–D(1)(E)(1).[6]

By so holding, we do not reach the merits of the State's additional claims: (1) that reclassification and reallocation do not constitute a mandatory subject of collective bargaining exclusive of the section 979–D(1)(E)(2) exclusion upon which this holding rests, (2) that they are matters prescribed or controlled by public law and therefore exempt from collective bargaining under section 979–D(1)(E)(1), or (3) that negotiation over the matters would be in derogation of or contravene the spirit and intent of merit system principles and thus not mandatory under section 979–D(1)(E)(2).

The entry is:

Judgment in CV–81–472 vacated. Remanded to Superior Court with directions to enter order reversing decision of MLRB in Case No. 81–44 and remanding to the MLRB for further proceedings in Case No. 81–56 consistent with the opinion herein.

McKUSICK, C. J., and NICHOLS, ROBERTS and WATHEN, JJ., concurring.

GODFREY, Justice, concurring:

I concur in the result on the ground that the ad hoc determination of questions of classification and allocation that would result from the collective bargaining process would be inconsistent with the systematic resolution of such questions contemplated by the personnel laws, particularly 5 M.R.S.A. §§ 593, 633 & 634. Collective bargaining over classifications and allocations seems to me to be barred by operation of subsection 2 of 26 M.R.S.A. § 979–D(1)(E), which provides as follows:

(2) Paragraph E subparagraph (1) shall not be construed to be in derogation of or contravene the spirit and intent of the merit system principles and personnel laws.

---

6. In concluding that collective bargaining over specific proposals to reclassify and reallocate certain groups of positions would not be in derogation of or contravene the spirit and intent of the Personnel Law, the Board, below, noted the extent of the powers given the Commissioner of Personnel in 5 M.R.S.A. §§ 631, 633 and 634. The powers vested in the Commissioner by §§ 631, 633 and 634 authorize him to promulgate rules and regulations concerning, *inter alia*, classifications and compensation plans, to establish classifications, and to submit a proposed allocation scheme to the Legislature. The Board reasoned that those powers, along with § 593, should not be read to foreclose collective bargaining over the matters there covered. To do so, it said, would "preclude all significant collective bargaining."

We do not find this analysis persuasive. First, the promulgation of rules and regulations for personnel administration, authorized by § 631, is specifically included as a mandatory subject of bargaining in 26 M.R.S.A. § 979–D(1)(E)(1)(f). The performance of the procedural obligations imposed upon the Commissioner by the specific language of § 593 is clearly separable from the powers conferred upon him by § 631 to prescribe or amend the substance of rules and regulations for personnel administration. The breadth of the latter power clearly contemplates that its exercise will touch subjects other than a specific "request for classification of positions, the allocation of new positions or the reallocation of existing positions in the classified service...." 5 M.R.S.A. § 593. Therefore, today's holding that the § 593 procedural obligations imposed on the Commissioner are not subject to collective bargaining does not imply that the totality of the § 631 power may not be treated, in appropriate circumstances, as subject to mandatory collective bargaining.

Further, the duties imposed on the Commissioner by §§ 631, 633 and 634 are not subject to the stringent time requirements required in the § 593 review of requests for reclassification and reallocation of particular positions. To the extent that the exercise of § 593 obligations requires greater expedition than does the exercise of the powers and obligations created by §§ 631, 633 and 634, our holding in this case does not foreclose, because of the absence of significant temporal requirements in either process, the availability of collective bargaining over the matters covered in those sections of the Personnel Law.