STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-2017-29

DAVID TRASK,
        Petitioner

**DECISION AND ORDER**

v.

FRATERNAL ORDER
OF POLICE,
        Respondent

The matter before the court is the appeal by David Trask (Petitioner) from the May 17, 2017 Decision and Order of a three-member panel of the Maine Labor Relations Board (the "Board" or MLRB), dismissing his prohibited practice complaint against his former union, the Fraternal Order of Police (Respondent or FOP). Specifically, the Board rejected the Petitioner's claims that the FOP violated its duty of fair representation towards him and other members of the union in connection the dissolution of the Madison Police Department in June 2015. This appeal has been brought in accordance with 26 M.R.S. §968(4), 5 M.R.S. §§1101-11008 (Administrative Procedure Act) and M.R.Civ.P. 80C.

## FACTUAL AND PROCEDURAL BACKGROUND

The collective bargaining agreement between the Town of Madison and the Maine Association of Police (MAP) expired on June 30, 2010. (Record, hereinafter "R," at 6). The terms of the agreement continued in effect while the Town and MAP continued negotiations to reach a successor agreement. In 2012, the Fraternal Order of Police replaced MAP as the bargaining agent for the members of the Madison Police Department, of which the Petitioner was a member. Jack Parlon

was the chief negotiator for FOP with the Town. Negotiations continued into 2013 and 2014, at which time the parties filed for interest arbitration.

In August 2014, the assessed value of the Madison Paper Industries Mill (the Town's largest taxpayer), was reduced from approximately $230 million to $80 million, resulting in a loss of tax revenue to the Town of approximately $2.2 million. (R. at 236). This development was the subject of discussion between the negotiators for the Town and FOP. Mr. Parlon testified that he believed or suspected that the Town was using the mill devaluation as a tactic to avoid bargaining in good faith or to induce the FOP to accept the Town's terms. (R. at 98). Ultimately, the FOP filed a prohibited practice complaint against the Town in December 2014, alleging a failure to bargain in good faith.

In January 2015, Dale Lancaster was elected Sheriff of Somerset County. Shortly after his election, Sheriff Lancaster was approached by Madison town officials who inquired about the possibility of having the Sheriff's Department provide police services to the Town. Sheriff Lancaster met privately with the soon-to-be retired Madison Police Chief and developed a proposal that included having the existing Town of Madison Police Department employees being hired by Somerset County. The proposal contemplated the County providing the same level of police services to the Town, but was budget neutral for the County because of savings from administrative costs and benefits.

In March 2015, the Madison Select Board met and voted in favor of a proposal to dissolve the Police Department effective July 1, 2015, and thereafter receive policing services from the Somerset County Sheriff's Department. A newspaper article reporting on the Select Board's meeting and vote was published in the Morning Sentinel on March 24, 2015. The proposal was to be subject to a public vote at the upcoming Town Meeting in June, 2015. The March 24, 2015 newspaper article was the first public notice that the Town was pursuing a plan to

2

dissolve the Police Department and contract with the Sheriff's Department for police services, although rumors of such a possibility had been circulating within the community.

Mr. Parlon testified that he had never experienced a situation where a municipality disbanded its police department. The FOP held a couple of informal meetings with the members of the Madison Police Department bargaining unit, and Mr. Parlon spoke several times to the Petitioner about the potential consequences of the proposal to be voted on at the Town Meeting. Moreover, the Petitioner had a personal relationship with the President of the Somerset County Law Enforcement Unit, and the Petitioner would sometimes speak with him about his concerns.

A public meeting was held on April 6, 2015 at which Sheriff Lancaster appeared. The Sheriff explained the proposal and answered questions from the audience. He stated that the 5 police officers and 1 secretary employed by the Madison Police Department, would be hired as county employees with county wages and benefits. A video of that meeting was admitted at the hearing before the MLRB as Complainant's Exhibit 5.

During this same time period, the FOP was also the bargaining agent for the Law Enforcement Division of the Somerset County Sheriff's Department, and the parties were able to successfully negotiate a new collective bargaining agreement by the end of June 2015. During those negotiations, Mr. Parlon and the Sheriff discussed the Madison employees, and how they would be treated if they became county employees. The Sheriff suggested a separate memorandum of agreement that would cover those individuals. Mr. Parlon opposed that idea on the ground that it would create two classes of employees with different terms and conditions of employment. The Sheriff made it clear to Mr. Parlon that the Madison police officers would be hired by the county as new employees, with no preservation of their rank or seniority, and subject to the standard probationary period of six

3

months. In other words, the Sheriff did not agree to a "lateral" hiring or transfer of these town employees.

At the time of these events, the Petitioner had been employed with the Madison Police Department for over 27 years and had risen to the rank of sergeant. Within that police force of 5 officers and the chief, the Petitioner had senior rank and seniority, allowing him to have a preferred status with respect to overtime and shifts. In addition, pursuant to the collective bargaining agreement with the Town of Madison, the Town paid 100% of the premium cost for family health insurance coverage. The collective bargaining agreement with the Somerset County Sheriff's Department provided that the county would pay only 70% of the premium cost for family or dependent coverage. Moreover, the Petitioner would lose his rank and seniority, with the resulting loss of any preferred treatment regarding shifts and overtime. In short, the proposal to abolish the Madison Police Department and shift policing services to the county, had significant and substantial financial consequences for the employees of the Madison Police Department, particularly the Petitioner. The Petitioner testified before the MLRB that there was "a commonly-held belief" within the Madison Police Department that the employees would go to the Sheriff's Department with the same positions, but with a new contract. This, of course, was not what the Sheriff contemplated.

On June 8, 2015, the voters of Madison were presented with two budget options for police services. The voters approved the option that represented the proposal to have the Sheriff's Department assume responsibility for police services in Madison. The change became effective on July 1, 2015. After the vote, the Petitioner met with the Sheriff and was told that he would not retain his rank and seniority, but would be hired as a deputy on probationary status. The day after the town vote (June 9, 2015), the FOP sent a formal demand for "joint impact bargaining to determine wages, hours and working conditions under the proposed

4

consolidation." (R. at 181; Jt. Exh. 5). Although the demand letter was addressed to both the Town Manager and the County Administrator, it was only delivered to the town.

On July 1, 2015, the former Madison Police Department employees were hired by Somerset County as new employees. The impact bargaining session was held on July 13, 2015, and focused on the financial impact on the former Madison employees as a result of the higher contribution to the health insurance premium for dependent coverage. Both Mr. Parlon and Mr. Trask attended this session. Mr. Trask testified that Mr. Parlon was very supportive of him and his concerns. Following the meeting, the Town's attorney called Mr. Parlon to inform him that since the Town was not legally obligated to do anything for the former employees, it would not do anything. The FOP made no further effort to bargain with the Town over the impact of the dissolution of the police department, nor did it seek mediation. Mr. Parlon testified that he had sought legal advice from FOP attorneys at both the state and national levels. Based on that advice, he was doubtful that the town was obligated to bargain over the impact of the voters' decision to disband the police department.

The FOP retained Attorney John Chapman to assist and consult with the Petitioner. The Petitioner asked Mr. Chapman if there was anything that could be done to "undo the damage" and make things the way they were. Attorney Chapman advised the Petitioner that there was nothing he was aware of that could be done. Attorney Chapman also represented the Petitioner at a counseling session with the Sheriff regarding his work performance. In December 2015, while still on probationary status, the Petitioner was terminated as a deputy sheriff. Later, on December 28, 2015, the Petitioner filed his prohibited practice complaint against the FOP with the MLRB. The complaint was later amended on February 9, 2016.

5

As amended, the complaint alleged that the FOP breached its duty of fair representation owed to its members who were formerly employed by the Madison Police Department, by failing to aggressively pursue impact bargaining on the issue of health issue premiums for family and dependent coverage, and by failing to pursue impact bargaining at all with respect to other issues, such as loss of rank and seniority.[1] The Board also addressed the related issue of whether the FOP breached its duty of fair representation by failing to demand impact bargaining prior to the public vote that dissolved the police department.

A three-member panel of the MLRB held an evidentiary hearing on October 20, 2016 and February 3, 2017. The panel heard the testimony of the Petitioner, Mr. Parlon and Sheriff Lancaster. It also received into evidence Joint Exhibits 1-5, and Complainant's Exhibits 1, 5 & 6, all of which are included in the administrative record.

In a Decision and Order dated May 12, 2017, the Board panel made extensive findings of fact, many of which have been summarized above, and ultimately dismissed the complaint after concluding that the FOP "did not breach its duty of fair representation because its conduct was not outside of the 'wide range of reasonableness' that must be afforded to a union in the conduct of its affairs." The Petitioner's appeal to this court was filed on May 25, 2017. Briefing was

---

[1] 26 M.R.S. §967(2) (¶ 5) provides that "[t]he agent certified by the executive director of the board as the exclusive bargaining agent shall be required to represent all the public employees in the unit . . . ." The Amended Complaint also alleged that the FOP breached its duty of fair representation with respect to the Petitioner's hiring as a Somerset County Deputy Sheriff. (R. at 43). The Executive Director of the Board dismissed this claim against Somerset County for failure to state a claim upon which relief may be granted. (R. at 45). That dismissal was not appealed to the Board.

6

completed on November 3, 2017 and oral argument was held on December 5, 2017.[2]

## DISCUSSION

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Departmental of Environmental Protection*, 2005 ME. 50, ¶ 7, 870 A.2d 566. *See also City of Bangor v. Maine Labor Relations Board*, 658 A.2d 669, 671 (Me. 1995). The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Maine Public Employees Retirement System*, 2009 ME. 134, ¶ 3, 985 A.2d 501. In particular, a party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Stein v. Me. Crim. Justice Academy,* 2014 ME 82, ¶ 11, 95 A.3d 612.

This court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lake v Board of Environmental Protection*, 2001 ME. 18 ¶13, 989 A. 2d 1128. The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3).

---

[2] Preliminarily, the court granted the request of the MLRB to participate in the appeal as a party-respondent, on the basis of *Bangor Water Dist. v. Maine Labor Relations Board,* 427 A.2d 973, 974, n.1 (Me. 1981) and *State v. Maine Labor Relations Board*, 413 A. 2d 510, 513 (Me. 1980). The court also denied the Petitioner's motion to exclude the brief submitted by the MLRB.

Determinations of the believability or credibility of the witnesses and evidence, supported by substantial evidence in the record, should not be disturbed by this court. *Cotton v Maine Employment Security Commission,* 431 A. 2d 637, 640 (Me. 1981). The issue is not whether the court would have reached the same result the agency did, but whether the "record contains competent and substantial evidence that supports the result reached" by the agency. *Seider v. Board of Examiners of Psychologists,* 2000 ME 206, ¶ 8, 762 A.2d 551 *quoting CWCO, Inc. v. Superintendent of Insurance,* 1997 ME 226, ¶ 6, 703 A. 2d 1258, 1261.

The issue before the Board was whether the FOP breached its duty of fair representation to the members of the unit, including the Petitioner, who were formerly members of the Madison Police Department. In its Decision and Order, the Board identified the proper legal standard for determining when a union's duty of fair representation has been breached, namely, "when a union's conduct toward a bargaining unit member is arbitrary, discriminatory, or in bad faith." R. at 246 *citing Lundrigan v. MLRB,* 482 A.2d 834 (Me. 1984) and *Vaca v. Sipes,* 386 U.S. 171, 190 (1967). Relying upon some of its earlier decisions, and *Langley v. MSEA,* 2002 ME 32, 791 A.2d 100, the Board described the scope of the duty of fair representation as follows:

> A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside of a wide range of reasonableness as to be irrational. A union's discriminatory conduct violates its duty of fair representation if it is invidious. Bad faith requires a showing of fraud, or deceitful or dishonest action.

(R. at 247).

In its Decision and Order, the Board described the factual and legal landscapes that existed at the time, as it assessed the reasonableness of the union's actions. The Board found:

8

The factual landscape in the first months of 2015 includes the $2.2 million budget shortfall faced by the Town, the Police Chief's pending retirement, the bargaining history between the Town and the FOP including the prohibited practice complaint filed in late 2014, the informal discussions that occurred after the Town announced the plan, the mixed reaction to the proposal from Town residents at the April 6 public hearing, the lack of evidence that the Madison police officers were opposed to becoming deputies, and the absence of evidence that unit members were advocating for the FOP to take a different approach to impact bargaining.

The legal landscape at the time of the alleged breach was the action taken by the Board of Selectmen to present the proposed move of policing services to the Town residents for approval at a Town meeting, the statutory declaration that the duty to bargain does not require either party to make a concession, the exclusion from coverage of the Act those employees with less than six months of employment with their employer, and the question surrounding the FOP's statutory authority to demand bargaining or interest arbitration after the Police Department ceased to exist on July 1, 2015.

(R. at 248).

With these landscapes in mind, the Board concluded that it was not arbitrary, i.e., not irrational, for the FOP to decide not to pursue further impact bargaining on the issue of health insurance premiums or on the other issues. Critical to the Board's conclusion was its recognition that the union "had essentially no bargaining leverage," and that it was "unlikely that the Town would have expressed any interest in providing the employees any more money than they [the Town] had to." (R. at 249). Moreover, the Board concluded that the FOP acted within the bounds of reasonableness by attempting to work with the Sheriff to address some of the members' concerns with the transition from town to county employment. *Id.* Regarding the issues of rank, seniority and probationary status, Sheriff Lancaster had made his position unmistakably clear, and it was not irrational for the FOP to conclude that it would have been fruitless to attempt to negotiate with the Town

9

concerning employment conditions at the Sheriff's Department. Finally, the Board found that the union's actions were not irrational, particularly in light of the small likelihood of success. Pursuing further impact bargaining or interest arbitration or filing additional prohibited practice complaints most likely would have resulted in protracted and expensive litigation, in the face of the reality that the Town had abolished its police department and was adamant that it would not pay money it was not obligated to pay, to members who were no longer employed by the Town. "The reasonableness of a union's conduct must include consideration of the costs and benefits of any course of action and the likelihood of success." (R. at 250). Given the open question as to whether "the FOP had the statutory authority of a bargaining agent once the Madison Police Department ceased to exist," the Board held that the actions of the union were "not even unreasonable, let alone irrational." *Id.*

The court has reviewed the entire record of the proceedings before the Board and is satisfied that the Board's Decision and Order is supported by competent and substantial evidence. Furthermore, the Board applied the correct legal principles and this court perceives no abuse of discretion by the Board. The court will address the specific claims of error advanced by the Petitioner on appeal to this court.

The Petitioner's primary argument is his assertion that the Board erred in its holding that the conduct of the FOP was not arbitrary. In assailing the Board's ultimate conclusion and holding, the Petitioner challenges individual factual findings by the Board, and also contends that the facts are (or should be) other than what the Board found. In making this argument, however, the Petitioner is essentially asking this court to substitute its judgment for that of the Board's. More specifically, this court's role is not to conduct a *de novo* assessment of the evidence. Rather, this court's function is to review the administrative record in its entirety and determine whether the Board's decision was supported by competent and substantial evidence. The record must be examined in its entirety, not in selective

10

bits and pieces. The court is satisfied that, taken as a whole, the record fairly and reasonably supports the ultimate conclusion that the FOP's actions and decisions were not outside the range of reasonableness so as to be irrational.

As part of his argument that the FOP's actions and inactions were arbitrary, the Petitioner contends that the Town of Madison did not merely disband its police department but, rather, it "contracted out" with Somerset County for police services. In essence, the Petitioner maintains that this case is controlled by *Fibreboard Paper Products Corp. v. N.L.R.B.*, 379 U.S. 203 (1964). The FOP, for its part, claims that this case is more akin to a "plant closing" and, therefore, not subject to mandatory bargaining. *See First National Maintenance Corp. v. N.L.R.B.*, 452 U.S. 666 (1981). The Board did not expressly address or resolve this disagreement between the parties in its Decision and Order.

In the court's view, the Board was correct in not wading into the complicated and uncertain question of whether the *Fibreboard* or *First National* line of cases applies in the context of a municipality, through a public vote of its citizens, deciding to disband its own police operations, and otherwise obtaining policing services from another governmental law enforcement agency. That issue was not before the Board for decision. Rather, the issue before the Board was whether the FOP, in the context of the factual and legal landscapes existing at the time, breached its duty of fair representation under the circumstances. As observed earlier, the evidence before the Board rationally supported the Board's decision that the union had not. In this regard, it is significant that the FOP sought and obtained the advice of legal counsel on the national and state level. Based on that advice, the FOP determined that the Town of Madison was under no legal obligation to bargain over the impact of the decision of the voters to eliminate its police department. Whether that advice would ultimately be shown to be right or wrong is not the point. What the Board was charged with doing was to make a determination, based

on the evidence, as to whether the FOP acted arbitrarily in deciding not to pursue further bargaining with the Town of Madison or to take other actions directed at the Town as a result of the proposal and subsequent vote on June 8, 2015.

Next, the Petitioner has argued that the Board committed error by concluding that the FOP's conduct was not discriminatory towards him. The Board found that the Petitioner had identified no facts to support his claim of discriminatory treatment, but had simply asserted that the Petitioner had suffered significant harm. (R. at 247). As noted earlier, to be discriminatory in the context of the duty of fair representation means to be "invidious." The court agrees with the conclusion of the Board that the Petitioner produced no evidence whatsoever that the FOP's actions were discriminatory or invidious. The Petitioner did articulate a number of ways in which the elimination of the Madison Police Department affected him because of his longevity, seniority and rank. But that is not the same thing as showing that the FOP acted invidiously.

The Petitioner also complains that the Board was wrong in "imposing a duty on the members of the bargaining unit to decide the action to be taken by the Fraternal Order of Police." *Pet.'s Brief* at 18. The perceived basis for this claim is the Board's observation that there was no evidence that the "unit members were advocating for the FOP to take a different approach to impact bargaining." (R. at 248; *see also* R. at 250) ("there was no evidence that Mr. Trask or anyone else in the bargaining unit suggested that the FOP continue the battle.").

Contrary to the Petitioner's argument, the Board imposed no duty on the unit members to decide how the FOP should act on their behalf. Rather, the Board merely pointed out that, in the context of the events leading up to public vote of June 8, 2015 and the negotiations for having the former town employees become county deputies, the unit members did not urge the FOP to take any particular

12

action. No duty was imposed on the unit members, but their lack of advocacy was, at least, a factor the FOP could take into account in deciding what to do.

The Petitioner further contends that the Board erred in its following conclusion:

> In light of all that had been going on, pursuing bargaining with the Town would have pitted the desires of the Police Department directly against the welfare of the taxpayers in a very public way. *The FOP's desire not to do this was not irrational.* (emphasis added).

(R. at 249).

The Petitioner points out that there was no evidence that the union wanted (or desired) to avoid "pitting the desires of the Police Department directly against the welfare of the taxpayers in a very public way" and, in any event, the FOP owed a duty to the Petitioner, not to the taxpayers of Madison. At worst, the language used by the Board was less than artful. The court understands the Board's point to be that the union was confronting a somewhat delicate and unfamiliar situation and dilemma. On the one hand, the voters of Madison had decided to dissolve the Town's Police Department. This vote followed a long and contentious period of negotiations for a new contract and was made after it became clear that the Town was dealing with a major revenue shortfall of $2.2 million. At the same time, the FOP was the bargaining agent for the Somerset County deputies, and the plan was for the former employees of the town to become county employees. The proposal involved the former employees working and patrolling in Madison, just as they had done before but now as deputy sheriffs, not town police officers. The statement by the Board in its Decision and Order merely reflects the obvious point that insisting on more bargaining with the Town, or filing new or additional prohibited practice complaints, in order to make the Town pay more money to its former employees, was precisely what the vote of June 8, 2015 was designed to avoid. In any event, the court agrees that if the statement by the Board was erroneous, it was harmless

13

and it does not undermine the otherwise competent evidence in the administrative record.

Finally, the Petitioner takes issue with the following statement of the Board:

> In its brief, the Complainant raises for the first time an alleged breach of the duty of fair representation in the FOP's failure to demand bargaining over the decision to contract with the Sheriff's, as distinct from the impact of that decision. We dismiss this charge as untimely.

(R. at 247).

In his Brief before this court, the Petitioner maintains that the Board misconstrued his argument, and that "[w]hat Petitioner does contend is that the Fraternal Order of Police should have demanded bargaining over the *terms* of that contract once the Town's decision had been made known." *Pet.'s Brief* at 21-22 (emphasis in original). Even if the Board misunderstood the true nature of the Petitioner's argument on this point, the issue of demanding bargaining with the Town of Madison over the terms of *its* contract with Somerset County was not raised in the Amended Complaint before the Board and, accordingly, was untimely.

## CONCLUSION

The entry is:

The Petition for Judicial Review of Final Agency Action is DENIED.

The Clerk is directed to incorporate this Order into the docket of this case by notation reference in accordance with M.R.Civ.P. 79(a).

DATED: January 30, 2018.

William R. Stokes
Justice, Maine Superior Court

14